HOSPIRA INCORPORATED, PLAINTIFF v. ALPHAGARY CORPORATION, DEFENDANT

No. COA08-487

(Filed 6 January 2009)

**1. Fraud— manufacturing material—sale to subcontractor rather than directly to plaintiff**

The trial court did not err by granting summary judgment on fraud claims for a company which supplied resin for use in manufacturing IV administration kits. The transaction and the communications in issue involved the sale of resin pellets from defendant to Moll, the subcontractor that manufactured the part which used the resin, not from defendant to plaintiff.

**2. Fraud— negligent misrepresentation—manufacturing material—third-party—no direct reliance**

The trial court did not err by granting summary judgment on negligent misrepresentation claims for a company which supplied resin for use in manufacturing IV administration kits. The record does not show a direct reliance by plaintiff on any statements or documents from defendant about the nature of the compounds sold to Moll, a third party vendor.

**3. Unfair Trade Practices— misrepresentation—manufacturing material—no capacity to deceive**

The trial court did not err by granting summary judgment on unfair trade practice claims for a company which supplied resin for use in manufacturing IV administration kits. These claims were based on an alleged misrepresentation, but plaintiff provided no evidence to indicate that the representations made by defendant to a third-party vendor had the capacity to deceive plaintiff or that plaintiff actually relied on them.

### 4. Contracts— breach—third party beneficiary—summary judgment

The trial court did not err by granting summary judgment in favor of defendant on plaintiff's third party beneficiary breach of contract claim arising from defendant's provision of resin to a third party, Moll, to be used in manufacturing IV administration kits. While the evidence suggests that plaintiff may have coordinated the agreement between Moll and defendant, and that defendant knew about the agreement between plaintiff and Moll to manufacture the part used in the kits, this alone is insufficient to establish plaintiff as a third party beneficiary without demonstration of plaintiff's active and direct involvement.

### 5. Negligence— economic loss rule—no contractual privity

The trial court erred by not reinstating a negligence claim originally dismissed under the economic loss rule. Under *Lord v. Customized Consulting Specialty, Inc.*, 182 N.C. App. 635, the rationale for barring recovery under the economic loss rule is not advanced by barring a claim for negligence where no contractual privity exists between the parties. The parties agreed that there was no contract between plaintiff and defendant.

Appeal by plaintiffs from orders entered 16 February 2006, 16 August 2007, and 9 November 2007 by Judge Albert Diaz in Superior Court, Mecklenburg County. Heard in the Court of Appeals 21 October 2008.

*Reinhart Boerner Van Deuren S.C., by Allen C. Schlinsog, Jr. and Colleen E. Fielkow; Robinson, Bradshaw & Hinson, P.A., by R. Steven DeGeorge and Jonathan C. Krisko, for plaintiff-appellant.*

*McGuirewoods, LLP, by Bradley R. Kutrow and Brian Kahn, for defendant-appellee.*

WYNN, Judge.

Plaintiff Hospira Incorporated[1] appeals from summary judgment granted in favor of Defendant AlphaGary Corporation on Hospira's claims for fraud, negligent misrepresentation, violations of the Unfair and Deceptive Trade Practices Act, and third party beneficiary breach

---

1. Before 12 April 2004, Hospira Incorporated was known as Abbott Laboratories' Hospital Products Division.

of contract. Hospira also appeals from the 16 February 2006 order dismissing its negligence claim and from the 16 August 2007 order denying its motion to reinstate the negligence claim in light of *Lord v. Customized Consulting Speciality, Inc.*, 182 N.C. App. 635, 643 S.E.2d 28, *disc. review denied*, 361 N.C. 694, 652 S.E.2d 647 (2007). We affirm summary judgment on the fraud, negligent misrepresentation, violations of the Unfair and Deceptive Trade Practices Act, and third party beneficiary breach of contract claims. However, we reverse the trial court's dismissal of Hospira's negligence claim.

Hospira manufactures medical devices known as sight chambers, which are small transparent tubes that attach to intravenous (IV) lines and allow the monitoring of fluids. Hospira sells sight chambers to healthcare providers as part of IV administration kits. To manufacture the sight chambers, Hospira uses a specially formulated polyvinyl chloride (PVC) compound known as Ashland Dry-Blend (ADB) or 50-0218. ADB is a "radiation grade" material, meaning that the resin can withstand sterilization by irradiation. Hospira converts the ADB into pellets in a process called "pelletizing" which involves heating the plastic powder ADB and extruding it into pellets for use in injection molding. The pellets are then used in molding the chambers.

Hospira previously formulated and pelletized ADB, and molded the sight chambers itself; however in 1999, Hospira began to contract with Moll Industries, Inc. to manufacture its sight chambers. In late 2001, Hospira retained AlphaGary to pelletize the ADB for use in the molding process. AlphaGary signed a specification letter, prepared by Hospira, for the production of ADB pellets, material number 75-1648. The letter included a continuing guarantee that the pellets be manufactured in accordance with Hospira's specifications. The letter did not address the specifications for pellets ordered by third party vendors.

In November 2001, Hospira again retained Moll to manufacture some of its sight chambers. However, Hospira did not supply the ADB pellets directly to Moll as it had done in previous orders; rather, Hospira instructed Moll to purchase the pellets from AlphaGary. But, instead of using ADB to make the pellets sold to Moll, AlphaGary used its own proprietary non-radiation grade PVC resin. Thereafter, Moll, using the pellets provided by AlphaGary, manufactured millions of sight chambers, which Hospira purchased and incorporated into its IV administration kits. Over time, Hospira learned that the cham-

bers were becoming severely discolored after repeated sterilization. Upon discovering that the pellets Moll used to make the chambers were not "radiation grade" ADB, Hospira recalled, replaced, and destroyed the sight chambers and accompanying kits.

On 5 April 2005, Hospira brought an action against AlphaGary for fraud, negligent misrepresentation, negligence, estoppel, third party beneficiary breach of contract, and violation of the North Carolina Unfair and Deceptive Trade Practices Act. Hospira alleged that AlphaGary intentionally concealed its use of an "unapproved" compound substitute and made false and misleading statements to Moll and Hospira's management in an attempt to cover-up the switch. In response, AlphaGary moved to dismiss the action under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. By order dated 16 February 2006, the trial court granted AlphaGary's motion regarding Hospira's claim for negligence and estoppel but denied its motion regarding the remaining four claims.

On 1 May 2007, AlphaGary moved for summary judgment on the remaining claims. The trial court granted summary judgment for AlphaGary and denied Hospira's Rule 60(b)(6) motion to reinstate its negligence claim in light of *Lord*. Hospira appeals arguing that the trial court erred by (I) granting summary judgment in favor of AlphaGary and (II) failing to reinstate its negligence claim, originally dismissed as barred under the economic loss rule, in light of *Lord*.

I.

This Court reviews an appeal from summary judgment to determine "whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998) (citation omitted). Reviewing the evidence presented in the light most favorable to the non-moving party, summary judgment is appropriate when "(1) an essential element of the other party's claim or defense is non-existent; (2) the other party cannot produce evidence to support an essential element of its claim or defense; or (3) the other party cannot overcome an affirmative defense which would bar the claim." *Caswell Realty Assocs. v. Andrews Co.*, 128 N.C. App. 716, 720, 496 S.E.2d 607, 610 (1998) (citation omitted).

In its appeal, Hospira argues that the trial court erred in granting summary judgment for AlphaGary on its claims of (A) fraud and neg-

ligent misrepresentation; (B) violation of the North Carolina Unfair and Deceptive Trade Practices Act, and (C) third party beneficiary breach of contract. We disagree.

## A.

[1] Hospira first argues that the trial court erred by granting summary judgment in favor of AlphaGary on its claims of fraud and negligent misrepresentation. To survive a motion for summary judgment on the charge of fraud, the record must show evidence of the following: "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." *Harrold v. Dowd*, 149 N.C. App. 777, 782, 561 S.E.2d 914, 918 (2002) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 138-39, 209 S.E.2d 494, 500 (1974)). After careful review, we find no error.

Although the record reflects significant communications between AlphaGary and Moll, there is no evidence in the record that AlphaGary concealed or misrepresented to Hospira the composition of the pellets supplied to Moll or that AlphaGary acted with intent to deceive either party. An essential element of actionable fraud is that the false representation or concealment be made *to the party acting thereon. See, e.g., Shreve v. Combs*, 54 N.C. App. 18, 282 S.E.2d 568 (1981). The transaction and communications at issue here involved the sale of pellets from AlphaGary to Moll, not from AlphaGary to Hospira. Absent an agency or fiduciary relationship between Moll and Hospira, there are no grounds on which Hospira can maintain a claim based on allegations of direct false representation.

Nonetheless, Hospira argues that, based on the specification letter and continuing guarantee, AlphaGary agreed to follow certain specifications and that the agreement applied to all purchases of "75-1648" or ADB pellets, whether by Hospira or a third party vendor. However, the record reflects that the specification letter was binding only as to transactions between Hospira and AlphaGary. The specification letter includes nothing to indicate that the specifications were also intended to apply to transactions between AlphaGary and Moll. Accordingly, this argument is without merit.

Further, Hospira argues that AlphaGary's misrepresentations, conveyed through Moll, are actionable. Hospira relies on the Court's holding in *Rowan County Bd. of Education v. U.S. Gypsum Co.*, 332 N.C. 1, 418 S.E.2d 648 (1992), in which a school district was found to

have an actionable fraud claim against the defendant because the school district's architect relied on the false representations made by the defendant. However, in *Rowan County*, the architect to whom the misrepresentation was made was an *agent* of the plaintiff. The architect relied on the statements in the defendant's sales brochure, which claimed that the building material was "ideal for ceilings in schools" and failed to discuss the known health hazards associated with the use of asbestos. *Id.* at 17, 418 S.E.2d at 659. Later, having discovered that the insulation contained harmful asbestos and had to be removed, the school sued the manufacturer for fraud. Throughout the opinion in *Rowan County*, the issue of whether the school proved the element of reliance is framed in terms of whether the school or its *agent* relied on the defendant's misrepresentations in choosing the building materials. Specifically, the Court stated that the defendant's liability for fraud was based on the fact that "the agent of Rowan responsible for ordering . . . installation" relied on the misrepresentations in the defendant's literature. *Id.* at 21, 418 S.E.2d at 661.

Here, there is no evidence to suggest that Moll acted as Hospira's agent in purchasing the compounds for pelletization from AlphaGary; in fact, Hospira denied that Moll was its agent. Still, Hospira points out that the decision in *Rowan County* does not explicitly define "agent" or analyze the degree of control the school district exercised over the architect. However, we believe that the context of the decision indicates that the Court intended to give the term "agent"—a term of art—its legal meaning: "one who, with another's authority, undertakes the transaction of some business or the management of some affairs on behalf of such other, and to render an account of it." *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 435, 617 S.E.2d 664, 669 (2005) (citation omitted); *see also State v. Weaver*, 359 N.C. 246, 258, 607 S.E.2d 599, 606 (2005) ("Two essential elements of an agency relationship are: (1) the authority of the agent to act on behalf of the principal, and (2) the principal's control over the agent."). There is nothing to suggest that the holding in *Rowan County* should be read to allow misrepresentations, conveyed through a non-agent party, to be actionable fraud. Accordingly, *Rowan County* has no application to this case.

[2] Similarly, Hospira's claim for negligent misrepresentation fails. To establish a claim for negligent misrepresentation, a party must show that he: "[(1)] justifiably relies [(2)] to his detriment [(3)] on information prepared without reasonable care [(4)] by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry*,

*Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988), *rev'd on other grounds*, 329 N.C. 646, 407 S.E.2d 178 (1991).

In *Raritan*, the plaintiff brought a negligent misrepresentation suit against a defendant, a certified public accountant, who published a report containing financial information about a company to whom the plaintiff later extended credit. *Id.* at 200, 367 S.E.2d at 609. However, the plaintiff was suing the defendant under the theory that it relied to its detriment on a third party's estimate of the company's net worth, which, in turn, was based on information the third party obtained from the defendant's report. *Id.* at 205, 367 S.E.2d at 612. Our Supreme Court concluded; "a party cannot show justifiable reliance on information contained in audited financial statements without showing that he relied upon the actual financial statements themselves to obtain this information." *Id.* at 206, 367 S.E.2d at 612.

Here, evidence in the record suggests that while Hospira may have relied on the certifications provided by Moll, Moll was not a passive intermediary. The specification numbers and information provided by Moll to Hospira were materially inconsistent with the certifications AlphaGary provided to Moll. Moll's quality supervisor testified that Moll's certification records were not properly and consistently prepared, noting that the raw material descriptions contained in the certifications prepared by Moll often varied within the same lot of material. Indeed, Hospira presented no evidence of direct reliance on AlphaGary's certification documents.

In sum, under a theory of negligent misrepresentation, liability cannot be imposed when the plaintiff does not *directly* rely on information prepared by the defendant, but instead relies on altered information provided by a third party. Because the record fails to show a direct reliance on any statements or documents from AlphaGary about the nature of the compounds then sold to it by Moll, we uphold the trial court's grant of summary judgment on this issue.

B.

[3] Hospira next argues that the trial court erred in granting summary judgment for AlphaGary on Hospira's claim for unfair and deceptive trade practices. We disagree.

"In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plain-

tiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). In making a claim of unfair and deceptive trade practices on a theory of misrepresentation or fraud, a plaintiff must show that a defendant's words or conduct possessed "the tendency or capacity to mislead" or create the likelihood of deception. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). "Where an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains." *Tucker v. Blvd. at Piper Glen L.L.C.*, 150 N.C. App. 150, 154, 564 S.E.2d 248, 251 (2002) (citation omitted); *cf. Cullen v. Valley Forge Life Ins. Co.*, 161 N.C. App. 570, 589 S.E.2d 423 (2003) (holding that actual reliance is not required to establish injury under N.C. Gen. Stat. § 58-63-15(1) (2001), which governs the unfair methods of competition and unfair and deceptive acts or practices in the business of insurance), *disc. review denied sub nom. Santomassimo v. Valley Forge Life Ins. Co.*, 358 N.C. 377, 598 S.E.2d 138 (2004).

Again, Hospira provided no evidence in the record to indicate that representations made by AlphaGary to Moll had the capacity to deceive Hospira or that Hospira actually relied on them. As discussed regarding Hospira's fraud and negligent misrepresentation claims, Hospira offered no evidence of its actual reliance on the alleged misrepresentations. Additionally, the evidence presented to the trial court reveals that documents AlphaGary provided Moll contained the "3006-85" compound description. Hospira's own employee testified that, had he seen the technical data sheet AlphaGary gave Moll, he would have known that "PVC 3006-85" was not the radiation grade material Hospira wanted Moll to use. Although Hospira argues that the use of a different number and description was deceptive, the evidence suggests that the use of a non-ADB code and description should have disclosed the confusion to Moll. Accordingly, we find no error.

C.

[4] Hospira further argues that the trial court erred in granting summary judgment in favor of AlphaGary on its third party beneficiary breach of contract claim. "To establish a claim based on the third party beneficiary contract doctrine, a complaint's allegations must show: (1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his *direct*, and not incidental, benefit." *Leasing*

*Corp. v. Miller*, 45 N.C. App. 400, 405-06, 263 S.E.2d 313, 317 (emphasis added) (citation omitted), *cert. denied*, 300 N.C. 374, 267 S.E.2d 685 (1980). " 'A person is a direct beneficiary of the contract if the contracting parties intended to confer a legally enforceable benefit on that person. It is not enough that the contract, in fact, benefits the [third party], if, when the contract was made, the contracting parties did not intend it to benefit the [third party] directly.' " *Revels v. Miss Am. Org.*, 182 N.C. App. 334, 336, 641 S.E.2d 721, 723 (2007) (quoting *Holshouser v. Shaner Hotel Grp. Props. One*, 134 N.C. App. 391, 400, 518 S.E.2d 17, 25 (1999)). In determining whether the parties intended to benefit a third party, we must consider the surrounding circumstances as well as the language of the contract. *Revels*, 182 N.C. App. at 336, 641 S.E.2d at 723.

Hospira contends that it provided sufficient evidence that the contracts between Moll and AlphaGary were for its direct benefit. However, Hospira provides no evidence to suggest that it was an intended beneficiary of the contract between Moll and AlphaGary. The invoices, emails, and phone communications regarding the transactions are exclusively between representatives from Moll and AlphaGary. They do not involve the type of "active and direct dealings" which courts have required to confer third party beneficiary status on a party not contemplated by the contract itself. *See CF Industries v. Transcontinental Gas Pipe Line*, 448 F. Supp. 475, 481 (W.D.N.C. 1978) (holding that plaintiff's claim for third party beneficiary status was supported by evidence in the record of active and direct dealings between the plaintiff and a party to the contract). While the evidence suggests that Hospira may have coordinated the agreement between Moll and AlphaGary, and that AlphaGary knew about the agreement between Moll and Hospira to manufacture sight chambers, this alone, without demonstration of Hospira's "active and direct" involvement, is insufficient to establish that Hospira was a third party beneficiary.

Additionally, the facts presented here are similar to *Vogel v. Reed Supply Co.*, 277 N.C. 119, 177 S.E.2d 273 (1970), where the Court held that a landowner was not entitled to sue as a third party beneficiary to a contract between a general contractor and a subcontractor. The Court reasoned:

> In our view the subcontract here was not intended for the benefit of the plaintiff landowner. Plaintiff benefits only incidentally or indirectly because performance of the subcontract was rendered in fulfillment of Reed's obligation to the general contractor.

Hence, any benefit derived from the subcontract by the landowner would necessarily accrue indirectly, *i.e.*, through the general contractor.

*Id.* at 129, 177 S.E.2d at 279. Although *Vogel* involved a subcontractor and a general contractor, the facts of *Vogel* parallel those presented here. Moll and AlphaGary established a contractual relationship whereby AlphaGary provided Moll with PVC compound pellets. Moll then used the pellets to manufacture goods it sold to Hospira. As in *Vogel*, any benefit received by Hospira would "necessarily accrue indirectly" through Moll. *Id.* Based on our review of governing case law and the lack of evidence presented by Hospira, we find no error.

## II.

[5] Finally, Hospira contends that the trial court erred in failing to reinstate its negligence claim, originally dismissed as barred under the economic loss rule, in light of the Court's decision in *Lord*.[2] We agree.

In *Lord*, plaintiffs brought suit against defendants for negligence, including the group referred to as "84 Lumber Defendants," who were subcontracted to provide the wooden trusses used in the construction of the plaintiffs' residence. *Lord*, 182 N.C. App. at 637, 643 S.E.2d at 29. Because the defendants were subcontractors, no contractual privity existed between the two parties. In assessing whether the economic loss rule barred plaintiffs' negligence claim, this Court discussed the origin and evolution of the rule in North Carolina, explaining:

As previously stated by this Court, "[t]he rationale for the economic loss rule is that the sale of goods *is accomplished by contract* and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective." Thus, the rule encourages contracting parties to allocate risks for economic loss themselves, because the promisee has the best opportunity to bargain for coverage of that risk or of faulty workmanship by the promisor.

*Id.* at 639, 643 S.E.2d at 30 (internal citations omitted) (emphasis added). Thus, where no contractual privity exists between parties,

---

2. Although Hospira assigns the original motion to dismiss its claim for negligence in its assignments of error and arguments in its brief, Hospira only argues that the decision was in error in light of *Lord*. Accordingly, this Court need only consider the order denying Hospira's motion to reinstate.

the rationale for barring recovery under the economic loss rule is not advanced by barring a claim for negligence. *See Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 499 S.E.2d 772 (1998) (holding that owners of a recreational vehicle were barred from recovering for pure economic loss from all defendants under the economic loss rule, including the component part manufacturer, who was not in privity with plaintiff, but where the Court concluded the remote supplier was covered under the subsidiary manufacturer's limited warranty).

Given the holding in *Lord* and both parties' agreement that there was no contract between Hospira and AlphaGary, we hold that the trial court erred in failing to reinstate Hospira's negligence claim.

Affirmed in part; Reversed and remanded in part.

Judge BRYANT concurs.

Judge ARROWOOD concurs prior to 31 December 2008.