BOGNC, LLC v. Cornelius NC Self-Storage, LLC, 2012 NCBC 23.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | CONSOLIDATED CASES |
| | 10 CVS 19072 |

BOGNC, LLC,

     Plaintiff,

       v.

CORNELIUS NC SELF-STORAGE LLC,
DOUGLAS M. PRUITT and
wife, KRISTA A. PRUITT and
ROBERT E. WATSON and wife,
LOIS J. WATSON,

     Defendants and Third-Party
     Plaintiffs,

       v.

HARRY STATHOPOULOS, F. EUGENE
ALLISON, CSSNC, LLC, WILLIAM R.
WALTON, DEBORAH A. WHITE, and
TRAY RORIE,

     Third-Party Defendants,

ORDER & OPINION

ROBERT E. WATSON and
DOUGLAS M. PRUITT,
individually, and derivatively on behalf of
Cornelius NC Self-Storage, LLC, LOIS J.
WATSON, and KRISTA A. PRUITT,

     Plaintiffs,

       v.

WILLIAM R. WALTON, DEBORAH A.
WHITE, TRAY RORIE and CORNELIUS
NC SELF-STORAGE, LLC,

     Defendants,

       v.

PRUITT CONSTRUCTION, INC.

     Third Party Defendant.

10 CVS 12371

*McMickle, Kurey & Branch, LLP by Kevin P. Branch for Defendants/Third-Party Plaintiffs.*

*The Chagaris Law Firm, P.A. by Christopher G. Chagaris for Plaintiff and Third-Party Defendants.*

Murphy, Judge.

**THIS MATTER** is before the Court on Plaintiff BOGNC, LLC ("BOGNC"), Third-Party Defendant F. Eugene Allison ("Allison"), Third-Party Defendant Harry J. Stathopoulos ("Stathopoulos"), and Third-Party Defendant CSSNC, LLC's ("CSSNC"), hereinafter collectively ("Movants") Motion to Dismiss claims of fraud and negligent misrepresentation raised by Defendants and Third-Party Plaintiffs Douglas M. Pruitt and Krista A. Pruitt ("Pruitts") and Robert E. Watson and Lois J. Watson ("Watsons"), collectively ("Third-Party Plaintiffs").

Having considered the Court file, the parties' briefs, and other submissions, the Court **GRANTS** Movants' Motion to Dismiss.

I.

PROCEDURAL HISTORY

{1}    On September 20, 2010, BOGNC brought an action against Cornelius NC Self-Storage, LLC ("Cornelius Self-Storage"); the Pruitts; and the Watsons (collectively "Defendants") captioned 10 CVS 19072, to recover alleged deficiencies on a construction loan note and personal guarantees.

{2}    On November 1, 2010, the case was designated as a mandatory complex business case and assigned to this Court.

{3}    On December 6, 2010, the Pruitts and the Watsons filed counterclaims against BOGNC and a Third-Party Complaint against Third-Party Defendants William R. Walton, Deborah A. White, Tray Rorie, CSSNC, and BOGNC member-managers Allison and Stathopoulos alleging fraud; negligent misrepresentation; breach of fiduciary duty; constructive fraud; breach of covenants of good faith, loyalty, and due care; civil conspiracy; and unfair and deceptive trade practices.

{4}    Movants filed their Motion to Dismiss and accompanying brief on July 18, 2011, and Third-Party Plaintiffs filed their Memorandum of Law in Opposition

to Third-Party Defendants' Motion to Dismiss[1] on August 10, 2011, alternatively requesting that the Court treat Third-Party Defendants' Motion to Dismiss as a Motion for a More Definite Statement pursuant to North Carolina Rule of Procedure 12(e). (Third-Party Pls.' Mem. Opp'n Third-Party Defs.' Mot. Dismiss 6) (citing *Page v. Mandel*, 154 N.C. App. 94, 96–98, 571 S.E.2d 635, 636–38 (2002) (upholding trial court's treatment of a motion to dismiss under Rule 12(b)(6) as a motion for a more definite statement pursuant to Rule 12(e))).

II.

FACTUAL BACKGROUND

{5} While ordinarily the Court does not make findings of fact in connection with motions to dismiss, as such motions do "not present the merits, but only [determine] whether the merits may be reached," *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986) (citation omitted), for purposes of this Order and Opinion, the Court recites those factual allegations from Third-Party Plaintiffs' Counterclaims, Crossclaims, and Third-Party Complaint ("Third-Party Complaint") that are relevant to the Court's legal determinations.

{6} Third-Party Plaintiffs Robert Watson and Doug Pruitt are each 16.666% owners of Cornelius Self-Storage along with Third-Party Defendants Walton and Rorie, who hold 16.666% and 50% ownership shares, respectively. (Third-Party Compl. ¶ 14.) Cornelius Self-Storage was formed to construct, own,

---

[1] In their brief, Third-Party Plaintiffs include only Allison, Stathopoulos, and CSSNC in their definition of "Movants." (Third-Party Pls.' Mem. Supp. Mot. Dismiss 1.) The omission of BOGNC from the title of Third-Party Plaintiffs' memorandum ("Memorandum of Law in Opposition to Third-Party Defendants' Motion to Dismiss") and "Movants" as defined therein presents the question whether Third-Party Plaintiffs' opposition to Movants' Motion to Dismiss applies to BOGNC. Third-Party Plaintiffs' brief, however, argues that "Defendants' counterclaim/third-party complaint sufficiently asserts claims for fraud and negligent misrepresentation against Movants." (Third-Party Pls.' Mem. Supp. Mot. Dismiss 6.) In the Conclusion section of their brief, Third-Party Plaintiffs request (as an alternative to denying Movants' Motion) "leave to amend their counterclaim/third-party complaint." (Third-Party Pls.' Mem. Supp. Mot. Dismiss 7.) The Court finds these textual references to Defendants' *counterclaim* sufficient to infer that Third-Party Plaintiffs intended for the opposition to apply to all Movants (i.e., including BOGNC, the only plaintiff in the underlying action). The Court has, therefore, treated Third-Party Plaintiffs' opposition as effective with respect to all Movants in ruling on Plaintiff's and Third-Party Defendants' Motion to Dismiss.

and manage a mini-storage facility in Cornelius, North Carolina. (Third-Party Compl. ¶ 21.)

{7}     Storage Development & Capital, LLC ("SD&C") managed Cornelius Self-Storage until April 2010. Robert Watson is the manager of SD&C. (Third-Party Compl. ¶ 15.)

{8}     In August 2007, Cornelius Self-Storage entered into a loan agreement with Bank of Granite ("BOG") to refinance Cornelius Self-Storage's purchase of land, fund initial construction, and provide initial operating capital for the storage facility. (Third-Party Compl. ¶ 23.) The Watsons, the Pruitts, and Third-Party Defendants Walton and White guaranteed the loan in the principal amount of $3,876,000. As additional security for the loan, Cornelius Self-Storage executed a promissory note and deed of trust in favor of BOG. (Third-Party Compl. ¶ 23.)

{9}     To cover additional construction and operating costs, in March 2009, the parties amended the loan agreement by increasing the loan principal to $4,322,260, and executed a new promissory note and deed of trust. (Third-Party Compl. ¶ 25.) Payments on the loan were initially interest-only. (Third-Party Compl. ¶ 26.)

{10}    Third-Party Plaintiffs allege that BOG informed Cornelius Self-Storage in September 2009, that it would no longer fund construction and that principal payments would be required. (Third-Party Compl. ¶ 26.) At some point thereafter (not specified in the Third-Party Complaint) BOG declared a default and commenced foreclosure proceedings against Cornelius Self-Storage. (Third-Party Compl. ¶ 29.)

{11}    In response to the specter of foreclosure, Robert Watson, as manager of Cornelius Self-Storage, sought outside investors to purchase the loan note from BOG, save Cornelius Self-Storage from default, and avert potential deficiency liability for himself and the other guarantors. (Third-Party Compl. ¶¶ 28–30.) Among other proposals, Watson and his prospective investors offered to purchase the loan note for $2,800,000. BOG declined the offer. (Third-Party Compl. ¶¶ 31–32.)

{12}     Third-Party Plaintiffs allege that "Walton and Rorie then conspired to stage a coup intended to protect their individual financial interests at the expense of [Cornelius Self-Storage] and the [Third-Party] Plaintiffs,"[2] (Third-Party Compl. ¶ 36), electing themselves co-managers of Cornelius Self-Storage in April 2010. (Third-Party Compl. ¶¶ 36–37, 53.)

{13}     Allison and Stathopolous, who had become familiar with the history of the BOG loan to Cornelius Self-Storage (Third-Party Compl. ¶ 38), began "working in concert with Walton, White and Rorie to purchase the Note and Guarantees . . . and extinguish only the potential liabilities against Walton and White under their Guarantees, while . . . leaving the Counterclaim/Third Party Plaintiffs exposed" to liability.  (Third-Party Compl. ¶ 41.)  These Third-Party Defendants "purposefully excluded [Third-Party] Plaintiffs from these negotiations to purchase the Note and Guarantees from [BOG]."[3]  (Third-Party Compl. ¶ 43.)

{14}     In April 2010, Stathopolous formed Plaintiff BOGNC and Third-Party Defendant CSSNC.  (Third-Party Compl. ¶ 42.)  Third-Party Plaintiffs allege that Stathopolous is manager, and that Walton and Rorie are members, of BOGNC and CSSNC.  (Third-Party Compl. ¶¶ 49–50, 60–61.)

{15}     On April 9, 2010, NEWCO, LLC ("NEWCO"), an entity formed by Third-Party Defendant Allison, entered into an agreement with BOG to purchase certain assets including the loan note and guarantees.  (Third-Party Compl. ¶ 44.)  Allison "actively sought to keep the purchase of the Note and Guarantees hidden from the Counterclaim/Third Party Plaintiffs and requested that [BOG] do the same."  (Third-Party Compl. ¶ 47.)  NEWCO conveyed its interest in this agreement to BOGNC on April 19, 2010.  (Third-Party Compl. ¶ 48.)

{16}     At Robert Watson's request, Cornelius Self-Storage held a members' meeting on April 26, 2010, at which Walton and Rorie voted themselves managers

---

[2] Interpreting the pleading most favorably to the non-movants, the Court presumes that Third-Party Plaintiffs intended the references to "Plaintiffs" in paragraphs 36, 43, and 55 of the Third-Party Complaint to refer to themselves, as third-party plaintiffs, and not the plaintiff (singular) in the underlying action, BOGNC.
[3] *See supra*, footnote 2.

of Cornelius Self-Storage and disclosed to Watson that they were working with a third party to purchase Cornelius Self-Storage's loan note from BOG. They gave Watson no additional details. (Third-Party Compl. ¶¶ 53–54.)

{17} On April 29, 2010, Stathopolous notified Third-Party Plaintiffs that he was purchasing the loan note from BOG and that he intended to pursue deficiency actions against the guarantors if a foreclosure sale of Cornelius Self-Storage property did not cover the balance due on the note. (Third-Party Compl. ¶¶ 53–54.)

{18} Stathopolous arranged for BOGNC to purchase the loan note from BOG for $2,850,000. Included in the deal was a side agreement whereby BOG would refund $100,000 to BOGNC after closing. (Third-Party Compl. ¶ 58.) BOGNC, thereafter, assigned its rights to CSSNC on May 28, 2010 (Third-Party Compl. ¶ 59), and CSSNC purchased the note from BOG on June 8, 2010. (Third-Party Compl. ¶ 62.)

{19} Later in June 2010, all of Cornelius Self-Storage's real property was foreclosed upon and CSSNC made the highest bid at $2,900,000. (Third-Party Compl. ¶ 64.) "[A]n acquaintance of Robert Watson" submitted an upset bid of $3,045,000 (Third-Party Compl. ¶ 65), and CSSNC countered with an upset bid of $3,400,000. (Third-Party Compl. ¶ 66.)

{20} At the request of Robert Watson, Walton provided current mini-storage rental information from Cornelius Self-Storage that showed a sharp decline in revenue in June 2010. (Third-Party Compl. ¶ 67.) Third-Party Plaintiffs allege that Walton "intentionally caused [Cornelius Self-Storage's] rent roll to reflect a significant but artificial downturn . . . for the purposes of disincentivizing a further upset bid from Robert Watson's acquaintance." (Third-Party Compl. ¶ 68.) The intended effect of Walton's actions, according to Third-Party Plaintiffs, was to increase Third-Party Plaintiffs' deficiency liability for the benefit of Third-Party Defendants. (Third-Party Compl. ¶ 68.) Third-Party Plaintiffs allege that "[a]s a result of [Cornelius Self-Storage's] fictitious revenue decline, Robert Watson's acquaintance decided not to submit an additional upset bid, and CSSNC purchased

[Cornelius Self-Storage's] Property at foreclosure for $3,400,000." (Third-Party Compl. ¶ 69.)

{21} Third-Party Plaintiffs further allege that Walton and Rorie acted in their own personal financial interests in their management of Cornelius Self-Storage (Third-Party Compl. ¶ 71); that "Walton and Rorie collaborated with Allison, Stathopolous, CSSNC, and BOGNC to convert a business opportunity for themselves to the significant and improper detriment of . . . Third Party Plaintiffs and [Cornelius Self-Storage]" (Third-Party Compl. ¶ 72); and that Walton and White negotiated a settlement of their guarantees to BOGNC for far less than their pro rata shares of the deficiency, which resulted from a "rigged" foreclosure sale. (Third-Party Compl. ¶¶ 73–74.)

{22} Third-Party Plaintiffs allege that a new entity now owns Cornelius Self-Storage's former storage facility and that "Allison, Stathopolous, Walton and Rorie are affiliated with that new entity." (Third-Party Compl. ¶ 70.)

III.

LEGAL STANDARD

{23} On a motion to dismiss pursuant to Rule 12(b)(6), the appropriate inquiry for the Court is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quotation and citation omitted). "Similarly, where the complaint alleges facts that defeat the claim, the claim should be dismissed." *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 312 (1999) (citing *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 367 S.E.2d 609 (1988), *rev'd on other grounds*, 329 N.C. 646, 407 S.E.2d 178 (1991)).

IV.

ANALYSIS

A.

FRAUD

{24}    To state a claim for fraud, a plaintiff must allege a "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive[,] . . . (5) resulting in damage to the injured party." *Harrold v. Dowd*, 149 N.C. App. 777, 782, 561 S.E.2d 914, 918 (2002) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)).

{25}    Claims of fraud are held to a heightened pleading standard pursuant to Rule 9(b) of the North Carolina Rules of Civil Procedure. Specifically, the complaint must allege with particularity the "time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent act or representations." *Id.* (quoting *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981)). In stating a fraud claim, however, "[m]alice, intent, knowledge, and other condition of mind . . . may be averred generally." N.C. R. Civ. P. 9(b).

{26}    The North Carolina Court of Appeals has rejected the notion that misrepresentations conveyed through a non-agent party can constitute an actionable fraud claim against the defendant. *Hospira Inc. v. Alphagary Corp.*, 194 N.C. App. 695, 700, 671 S.E.2d 7, 12 (2009).

{27}    Here, Third-Party Plaintiffs' allegations, taken as true, are insufficient to establish that Movants or any persons or entities acting as Movants' agents committed fraud against Third-Party Plaintiffs.

{28}    The principal act of deception alleged in the Third-Party Complaint is that Third-Party Defendant Walton provided Robert Watson and Watson's acquaintance (a potential upset bidder in the foreclosure of Cornelius Self-Storage's property) with false revenue reports that discouraged the acquaintance from further bidding, leaving Third-Party Plaintiffs exposed to deficiency liability they might

have avoided through the acquaintance's hoped-for second upset bid. (Third-Party Compl. ¶¶ 68–69.)

{29}    Third-Party Plaintiffs, however, allege that it was *Walton's* intent, not that of Movants, to deceive Watson and his bidder by providing misinformation. Absent an allegation that Walton acted as Movants' agent in this act of deception,[4] Walton's conduct toward Watson and this potential third-party investor fails to establish a fraud claim against Movants. *See Braun v. Glade Valley School, Inc.*, 77 N.C. App. 83, 87, 334 S.E.2d 404, 407 (1985) (affirming dismissal of fraud claim pursuant to Rule 12(b)(6) where "the plaintiff made no allegations as to the defendant's intent to deceive the plaintiff").

{30}    Third-Party Plaintiffs also allege that Movants' involvement in the purchase of the BOG note, and concealment from Third-Party Plaintiffs of this and other efforts to take over Cornelius Self-Storage assets, constitutes fraud. (Third-Party Compl. ¶¶ 79(d)–(e).) Third-Party Plaintiffs, however, do not allege that they reasonably relied on Movants' alleged acts of concealment to their own detriment. *See Rosenthal v. Perkins*, 42 N.C. App. 449, 452, 257 S.E.2d 63, 66 (1979) (recognizing that "[i]n some circumstances concealment or nondisclosure may be considered as a positive misrepresentation and serve as a basis for actionable fraud," but affirming dismissal of fraud claim in the absence of "an allegation that plaintiffs reasonably relied upon the concealment and acted upon it" (internal citations omitted)).

{31}    Third-Party Plaintiffs allege, at most, that Movants "purposefully excluded" them from Movants' negotiations; that Movants "actively sought" to hide

---

[4] Here, such a possibility is defeated by Third-Party Plaintiffs' allegation that Walton provided the errant information *in his capacity as manager of Cornelius Self-Storage*. (Third-Party Compl. ¶¶ 67–68.) While the Third-Party Complaint may contain sufficient allegations to plausibly infer that, through Walton's conduct, Third-Party Complainants were "denied the opportunity to investigate" the accuracy of Cornelius Self-Storage revenue figures, and thus "could not have learned the true facts by exercise of reasonable diligence," *see Hudson-Cole Dev. Corp.*, 132 N.C. App. at 346, 511 S.E.2d at 313, this issue is not before the Court. At bottom, Third-Party Plaintiffs do not allege that *Movants* held, had a duty to disclose, or concealed from them this critical information.

their transaction for the BOG note from Third-Party Plaintiffs; and that Walton and Rorie "collaborated with" Movants to convert a Cornelius Self-Storage business opportunity to their own benefit. Yet, the Third-Party Complaint does not explain how any of this conduct deceived Third-Party Plaintiffs or induced their reliance, resulting in injury. For these reasons, the Third-Party Complaint fails to state a claim for fraud against Movants.

B.

NEGLIGENT MISREPRESENTATION

{32}    A viable claim for negligent misrepresentation requires allegations that a plaintiff justifiably relied to his detriment "on information prepared without reasonable care . . . by one who owed the relying party a duty of care." *Hospira Inc.*, 194 N.C. App. at 700–01, 671 S.E.2d at 12 (quoting *Raritan River Steel Co.*, 322 N.C. at 206, 367 S.E.2d at 612). Additionally, "under a theory of negligent misrepresentation, liability cannot be imposed when the plaintiff does not *directly* rely on information prepared by the defendant, but instead relies on altered information provided by a third party." *Id.* at 701, 671 S.E.2d at 12.

{33}    As previously noted, Third-Party Plaintiffs' negligent misrepresentation claim fails because the Third-Party Complaint does not allege that Third-Party Plaintiffs relied upon Movants' negligent acts or concealments in conducting their business affairs. *See Estate of Brown v. Thompson*, ___ S.E.2d ___, 2012 WL 1083130, at *3 (N.C. Ct. App. April 3, 2012) ("The element of justifiable reliance requires that the party rely upon information in a transaction." (citing *Raritan River Steel Co.*, 322 N.C. at 209–10, 367 S.E.2d at 614)); *see also Pinney v. State Farm Mut. Ins. Co.*, 146 N.C. App. 248, 256, 552 S.E.2d 186, 191 (2001) ("[T]he tort of negligent misrepresentation occurs when in the course of a business or other transaction in which an individual has a pecuniary interest, he or she *supplies false information* for the guidance of others in a business transaction." (internal quotation and citation omitted)).

{34}    Third-Party Plaintiffs' negligent misrepresentation claim is further troubled by the absence of allegations or argument (1) that Movants owed any duty

to Third-Party Plaintiffs to inform them of Movants' business dealings with BOG or Cornelius Self-Storage, or (2) that Movants' conduct proximately caused Third-Party Plaintiffs' alleged injury. Although adjudication of a motion to dismiss requires that "the complaint must be liberally construed," *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987) (citation omitted), the court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Strickland v. Hedrick*, 194 N.C. App. 1, 20, 669 S.E.2d 61, 73 (2008).

{35}   While the Third-Party Complaint alleges Movants' conduct proximately caused their injury, the Court finds no such inference permissible from the facts alleged. *See id.* In its most generous interpretation of the Third-Party Complaint, the Court similarly cannot identify a legally cognizable duty to support Third-Party Plaintiffs' negligent misrepresentation claim against Movants. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 59, 554 S.E.2d 840, 846 (2001) ("A duty is defined as an obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks." (citation and quotation omitted)). For these reasons, the Court grants Movants' Motion to Dismiss Third-Party Plaintiffs' claim for negligent misrepresentation.

{36}   By the Court's ruling in this Order and Opinion, Third-Party Plaintiffs' request to convert Movants' Motion to Dismiss to a Motion for a More Definite Statement pursuant to Rule 12(e) is rendered moot.

V.

CONCLUSION

{37}   For the reasons stated herein, the Court **GRANTS** Plaintiff BOGNC, LLC, Third-Party Defendant Allison, Third-Party Defendant Stathopolous, and Third-Party Defendant CSSNC, LLC's Motion to Dismiss Third-Party Plaintiffs' Second and Third Claims for Relief. Accordingly, Third-Party Plaintiffs' claims for fraud and negligent misrepresentation are hereby **DISMISSED**.

**SO ORDERED**, this the 25th day of April, 2012.