IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-35

Filed: 19 November 2019

Watauga County, No. 17 CVS 285

DAVIS & TAFT ARCHITECTURE, P.A., Plaintiff,

v.

DDR-SHADOWLINE, LLC, DEEDS REALTY SERVICES, LLC, and SHADOWLINE
PARTNERS, LLC, Defendants.

Appeal by defendant Shadowline Partners, LLC from judgment entered 12
July 2018 by Judge J. Thomas Davis in Watauga County Superior Court. Cross-
appeal by plaintiff from order entered 11 December 2017 by Judge R. Gregory Horne
in Watauga County Superior Court. Heard in the Court of Appeals 22 May 2019.

> *Eggers, Eggers, Eggers & Eggers, by Stacy C. Eggers, IV, and Kimberly M.
> Eggers, for plaintiff-appellee/cross-appellant.*
>
> *Forrest Firm, P.C., by Patrick S. Lineberry, and Clement Law Office, by D. Dale
> Howard, for defendant-appellant/cross-appellee Shadowline Partners, LLC.*

ZACHARY, Judge.

This case arises out of a contract dispute between Shadowline Partners, LLC
and Deeds Realty Services, LLC. Shadowline Partners, LLC appeals from a summary
judgment order finding it liable for breach of contract and in quantum meruit. Davis
& Taft Architecture, P.A., a third-party beneficiary to the contract, cross-appeals from
an order dismissing its claim for enforcement of a claim of lien. After review, we
affirm both orders.

## Background

Shadowline Partners, LLC ("Shadowline") owned and intended to sell real property that was to be developed into a student-housing complex. Two companies expressed an interest in the property: Deeds Realty Services, LLC ("Deeds Realty") and DDR-Shadowline, LLC ("DDR"). On 1 August 2016, before Shadowline entered into any agreement to sell its property, DDR contracted with Brent Davis Architecture, Inc. to perform architectural work on the planned student-housing complex. The contract was subsequently assigned to Davis & Taft Architecture, P.A. ("Davis & Taft"). At the end of the month, Davis & Taft submitted a fee proposal and payment schedule to DDR. Phases I and II of the proposal, respectively, encompassed the housing complex's "schematic design" and "design development." The first payment for Phase I was made by DDR on 31 August 2016.

On 30 September 2016, Shadowline entered into an Agreement for Purchase and Sale of Real Property ("the Agreement") with Deeds Realty. Davis & Taft agreed to perform architectural work pursuant to the Agreement between Shadowline and Deeds Realty, which explicitly named Davis & Taft under the section titled "Third Party Payments":

> Davis & Taft Architecture. TWO HUNDRED THIRTY THOUSAND AND NO/100 DOLLARS ($230,000.00) shall be payable to Davis & Taft Architecture ("Davis & Taft") by [Shadowline] on a payment schedule to be established by Davis & Taft. As of the date of execution of this Agreement, an invoice from Davis & Taft in the amount of $74,500.00

has been received by [Shadowline] and shall be paid by [Shadowline] within five (5) business days of execution of this Agreement and is included in the above-stated $230,000.00 obligation of [Shadowline]. [Shadowline] will expect another invoice for the remaining balance from Davis & Taft and shall pay said invoice (up to its obligation stated herein) received from Davis & Taft as and when due pursuant to said invoices. [Shadowline] agrees to pay the remaining balance owed into the [trust account of a Law Office] within five (5) business days of execution of this Agreement and authorizes [the Law Office] to pay future Davis & Taft invoice(s) up to the balance held in Trust. In the event of early termination of this Agreement for any reason, [Shadowline] shall be entitled to all plans, specifications, and any and all work product produced by Davis & Taft. [Deeds Realty] shall pay Davis & Taft all amounts owed in excess of [Shadowline's] obligation stated herein.

After the Agreement was signed, Deeds Realty assigned its interest in the contract to DDR. Because DDR failed to close on the property, Shadowline terminated the Agreement on 7 December 2016. At the time of termination, Shadowline still owed Davis & Taft $80,000 pursuant to the terms of the Agreement. Davis & Taft filed an $80,000 claim of lien against Shadowline, the property's owner.

On 7 June 2017, Davis & Taft filed a complaint in Watauga County Superior Court against DDR, Shadowline, and Deeds Realty alleging claims: (1) for breach of contract, (2) in quantum meruit, and (3) for enforcement of the claim of lien. On 5 October 2017, Shadowline filed a motion to dismiss all claims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On 11 December 2017, the

motion was heard before the Honorable R. Gregory Horne, who dismissed Davis & Taft's claim for enforcement of the claim of lien and discharged the lien.

On 25 June 2018, Davis & Taft moved for summary judgment on its remaining claims. The motion came on for hearing before the Honorable J. Thomas Davis, who (1) granted Davis & Taft's motion for summary judgment in its entirety, and (2) dismissed all claims against Deeds Realty. Shadowline timely filed notice of appeal from the summary judgment order. Davis & Taft filed notice of cross-appeal from the order dismissing and discharging its claim of lien.[1]

**Discussion**

A.     Claim of Lien

Davis & Taft argues that the trial court erred in dismissing its claim for enforcement of the claim of lien and by discharging the lien. We disagree.

A motion to dismiss "tests the legal sufficiency of the complaint." *Parker v. Town of Erwin*, 243 N.C. App. 84, 110, 776 S.E.2d 710, 729 (2015). Such a motion requires that the trial court decide, as a matter of law, whether the pleadings "state a claim upon which relief can be granted." N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2017). "Dismissal is proper (1) when the complaint on its face reveals that no law supports [the] plaintiff's claim; (2) when the complaint reveals on its face that some fact essential to [the] plaintiff's claim is missing; and (3) when some fact disclosed in

---

[1] Davis & Taft did not timely file its notice of appeal from the order dismissing the claim of lien; however, on 17 May 2019, this Court allowed its petition for writ of certiorari. N.C.R. App. P. 21(a)(1).

the complaint defeats the plaintiff's claim." *Signature Dev., L.L.C. v. Sandler Commercial at Union, L.L.C.*, 207 N.C. App. 576, 582, 701 S.E.2d 300, 305 (2010) (quotation marks omitted), *disc. review denied*, 365 N.C. 211, 710 S.E.2d 33 (2011). On appeal, this Court reviews a trial court's ruling on a 12(b)(6) motion *de novo*. *Id.* at 582, 701 S.E.2d at 306.

The North Carolina General Assembly has enacted legislation to protect the interests of contractors, laborers, and materialmen:

> Any person who performs or furnishes labor or professional design or surveying services or furnishes materials or furnishes rental equipment pursuant to a contract, either express or implied, *with the owner of real property for the making of an improvement thereon* shall . . . have a right to file a claim of lien on real property on the real property to secure payment of all debts owing for labor done or professional design or surveying services or material furnished or equipment rented pursuant to the contract.

N.C. Gen. Stat. § 44A-8 (2017) (emphasis added); *see also O & M Indus. v. Smith Eng'g Co.*, 360 N.C. 263, 268, 624 S.E.2d 345, 348 (2006) ("The materialman's lien statute is remedial in that it seeks to protect the interests of those who supply labor and materials that improve the value of the owner's property.").

The instant dispute concerns the meaning of the word "owner" under N.C. Gen. Stat. § 44-8, and whether Shadowline meets that definition. Shadowline argues that Davis & Taft did not contract with an "owner" of property "according to the straightforward language" of N.C. Gen. Stat. § 44A-8. We agree.

- 5 -

Chapter 44A defines "owner" as "[a] person who has an interest in the real property improved and for whom an improvement is made and who ordered the improvement to be made." N.C. Gen. Stat. § 44A-7(6) (2017). An "improvement" is defined as "[a]ll or any part of any building, structure, erection, alteration, demolition, excavation, clearing, grading, filling, or landscaping, including trees and shrubbery, driveways, and private roadways, on real property." *Id.* § 44A-7(4). Further, "improve" means:

> To build, effect, alter, repair, or demolish any improvement upon, connected with, or on or beneath the surface of any real property, or to excavate, clear, grade, fill or landscape any real property, or to construct driveways and private roadways, or to furnish materials, including trees and shrubbery, for any of such purposes, or to perform any labor upon such improvements, and shall also mean and include any design or other professional or skilled services furnished by architects, engineers, land surveyors and landscape architects registered under Chapter 83A, 89A or 89C of the General Statutes, and rental of equipment directly utilized on the real property in making the improvement.

*Id.* § 44A-7(3). These definitions are indicative of the legislature's intent in enacting § 44A-8. *See In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 560, 589 S.E.2d 179, 181 (2003).

In its complaint, Davis & Taft alleged that it "first furnished work, material, labor, and services to the property on October 19, 2016, and last furnished work, material, labor, and services to the property on February 28, 2017." However, Davis

& Taft stated that the labor furnished consisted of "[a]rchitectural design and schematic plans in accordance with the agreement for purchase and sale of real property." There is no evidence of the performance of any work directly affecting the real property during that time, a "fact essential to [Davis & Taft's] claim." *Signature Dev., L.L.C.*, 207 N.C. App. at 582, 701 S.E.2d at 305. Without work *directly impacting* the real property, the real property in question has not been "improved" as defined by N.C. Gen. Stat. § 44A-8. *See S.E. Steel Erectors, Inc. v. Inco, Inc.*, 108 N.C. App. 429, 434, 424 S.E.2d 433, 437 (1993) ("It is apparent that 'labor' and 'improve' contemplate *actual work* done by the person claiming a lien, whether that person be a manual laborer, supervisor, or skilled professional, *which directly impacted on the real property in question*." (emphasis added)).

In short, Shadowline does not qualify as an "owner" because no improvement was made to its real property, and Davis & Taft therefore did not have a contract with any owner pursuant to § 44A-8. Accordingly, the trial court correctly dismissed Davis & Taft's claim for enforcement of the claim of lien.

B.    Third-Party Beneficiary

Shadowline next argues that the trial court erred in granting summary judgment in Davis & Taft's favor on its claim for breach of contract because Davis & Taft was not an intended third-party beneficiary of the contract. We disagree.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2017). The standard of review for summary judgment is *de novo*. *Shroyer v. Cty. of Mecklenburg*, 154 N.C. App. 163, 167, 571 S.E.2d 849, 851 (2002).

A party is a direct beneficiary of a contract "if the contracting parties intended to confer a legally enforceable benefit on that person." *Hospira Inc. v. AlphaGary Corp.*, 194 N.C. App. 695, 703, 671 S.E.2d 7, 13, *disc. review denied*, 363 N.C. 581, 682 S.E.2d 210 (2009). By contrast, in order to establish a claim based on the third-party beneficiary doctrine, a complainant must show: "(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." *Hoots v. Pryor*, 106 N.C. App. 397, 408, 417 S.E.2d 269, 276 (citation omitted), *disc. review denied*, 332 N.C. 345, 421 S.E.2d 148 (1992). Moreover, "[i]t is not enough that the contract . . . benefits the [third party], if, when the contract was made, the contracting parties did not intend it to benefit the [third party] directly." *Hospira*, 194 N.C. App. at 703, 671 S.E.2d at 13 (quotation marks omitted); *see also Snyder v. Freeman*, 300 N.C. 204, 220, 266 S.E.2d 593, 604 (1980) ("[T]he determining factor as to the rights

of a third-party beneficiary is the intention of the parties who actually made the contract.").

In the case at bar, the record reveals that Davis & Taft was an intended third-party beneficiary of the Agreement. DDR and Shadowline named Davis & Taft in the section of the Agreement titled "Third Party Payments," and provided that $230,000 "shall be payable to Davis & Taft by [Shadowline] on a payment schedule to be established by Davis & Taft." The Agreement also provided that "[Shadowline] will expect another invoice for the remaining balance from Davis & Taft and shall pay said invoice . . . received from Davis & Taft."

Davis & Taft's specific inclusion, by name, within the "Third Party Payments" section of the Agreement provides strong evidence that it was an intended third-party beneficiary to the contract between Shadowline and DDR. *See Vogel v. Supply Co.*, 277 N.C. 119, 126-27, 177 S.E.2d 273, 278 (1970); 17B C.J.S. *Contracts* § 848 (2011) ("A third-party beneficiary *who is clearly designated as such* is seldom left without a remedy . . . ." (emphasis added)). Additionally, this intent was effectuated by Davis & Taft's performance of architectural services. Shadowline intended to sell—and DDR intended to purchase—the real property in question for the purpose of developing and building a student-housing complex, which required architectural plans and designs. Shadowline's obligation to pay for the architectural plans drawn by Davis & Taft thereby furthered the contract's purpose.

Davis & Taft's direct dealings with the parties to the Agreement are also of consequence. "[A]ctive and direct dealings" with one of the parties to a contract may confer third-party beneficiary status upon a plaintiff. *Hospira*, 194 N.C. App. at 703, 671 S.E.2d at 13. Here, before DDR and Shadowline executed the Agreement, Davis & Taft agreed to provide architectural services and sent DDR a payment schedule outlining the payment obligations under the Agreement. Even if Davis & Taft were not expressly named in the Agreement, Davis & Taft's involvement with the contracting parties evidences its status as a third-party beneficiary. *See Chem. Realty Corp. v. Home Fed. Sav. & Loan*, 84 N.C. App. 27, 33, 351 S.E.2d 786, 790 (1987).

In sum, the facts of this case compel the conclusion that the parties to the Agreement intended to benefit Davis & Taft. *See Hospira*, 194 N.C. App. at 703, 671 S.E.2d at 13 (noting that courts "must consider the surrounding circumstances as well as the language of the contract" when determining whether the parties intended to benefit a third party). Therefore, no issues of material fact exist, and the trial court properly granted summary judgment in favor of Davis & Taft as to its claim for breach of contract.[2]

---

[2] Because we conclude that Davis & Taft was a third-party beneficiary and that a contract did exist between the parties, we need not address any appeal relating to Davis & Taft's claim in quantum meruit. *See Ron Medlin Constr. v. Harris*, 364 N.C. 577, 580, 704 S.E.2d 486, 489 (2010) ("Quantum meruit is not an appropriate remedy when there is an actual agreement between the parties because an express contract precludes an implied contract with reference to the same matter." (internal citation and quotation marks omitted)).

## Conclusion

Upon review, we conclude that (1) Judge Horne properly dismissed Davis & Taft's claim of lien, and (2) Judge Davis correctly determined that there were no genuine issues of material fact and entered summary judgment in favor of Davis & Taft. Accordingly, we affirm both of the trial court's orders.

AFFIRMED.

Judges BRYANT and MURPHY concur.