Cabrera v. Hensley, 2012 NCBC 41.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| COUNTY OF McDOWELL | SUPERIOR COURT DIVISION |
| | 09 CVS 544 |

PERLA CABRERA, et al;

        Plaintiffs,

v.

JILL T. HENSLEY, et al;

        Defendants.

**ORDER & OPINION**

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| COUNTY OF McDOWELL | SUPERIOR COURT DIVISION |
| | 09 CVS 1062 |

BRIAN and NICOLE MARK, et al,

        Plaintiffs,

v.

CHRISTOPHER VAN DYKE, et al,

        Defendants.

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP by John S. Buford for Defendants Christopher Van Dyke and Jill T. Hensley.*

*Cogburn & Brazil, P.A. by William O. Brazil, III for Defendant Molly Oakman.*

*Cranfill, Sumner & Hartzog, LLP by Todd King for Defendant Charles B. Highsmith.*

*Roberts & Stevens, P.A. by Mark C. Kurdys and Stephen L. Cash for Defendants Nelson Eide and R. Keith Hollifield.*

*Teague Campbell Dennis & Gorham by Jacob H. Wellman, Brad G. Inman, and Christopher G. Lewis for Defendants Eric L. Ross, Douglas Elliott, James Gibbs, and Gerald F. Wright.*

Murphy, Judge.

{1}     **THIS MATTER** is before the Court on Defendants Christopher Van Dyke ("Van Dyke"), Jill T. Hensley ("Hensley"), Molly Oakman ("Oakman"), Charles B. Highsmith ("Highsmith"), Nelson Eide ("Eide"), R. Keith Hollifield ("Hollifield"), Eric L. Ross ("Ross"), Douglas Elliot ("Elliot"), James Gibbs ("Gibbs"), and Gerald F. Wright's ("Wright") (collectively the "Defendants" or "appraisers") Motions for Summary Judgment ("Defendants' Motions").  After considering the parties' motions and briefs, and the arguments made by counsel during a hearing before this Court on October 5, 2011, the Court **GRANTS** Defendants' Motions.

I.

PROCEDURAL HISTORY

{2}     This action is a consolidation of two cases filed in McDowell County, North Carolina that deal with Plaintiffs'[1] purchases of real estate in the residential development known as Wild Ridges at Morgan Creek ("Wild Ridges").

{3}     The first case ("Cabrera Case"), 09 CVS 544, was filed on June 23, 2009; designated as a mandatory complex business case on July 28, 2009; and assigned to this Court on July 29, 2009.  (Compl. p. 29; Desig. Order 1; Assign. Order 2.)  The second case ("Mark Case"), 09 CVS 1062, was filed on November 16, 2009; designated as a mandatory complex business case on December 17, 2009; assigned to the Honorable Ben F. Tennille on December 18, 2009; and reassigned to this Court on February 23, 2010.  (Compl. p. 18; Desig. Order 1; Assign. Order 2.)

{4}     Plaintiffs' initial Complaints alleged claims against the developer of Wild Ridges, the lenders that extended financing to each Plaintiff (Bank of America Corp.; Branch Banking & Trust Company; Fifth Third Bank , N.A., as successor in interest to First Charter Bank, N.A.; United Community Bank, N.A.; Wachovia Bank, N.A.; and Flagstar Bank, F.S.B. (collectively the "lenders")), and the appraisers who performed appraisals on lots financed by the lenders and purchased by Plaintiffs (Defendants Hensley, Ross, Eide, Van Dyke, Oakman, Highsmith, Wright, and Unknown Appraisers 1–7).

---

[1] Unless indicated otherwise, the Court's reference to "Plaintiffs" refers to all Plaintiffs in both the 09 CVS 544 action and the 09 CVS 1062 action.

{5}     Defendants Gibbs, Elliott, and Hollifield were not added as Defendants in the Cabrera Case until Plaintiffs properly filed an Amended Complaint on July 6, 2010.

{6}     Shortly after these cases were designated to the Business Court, the Chapter 7 Bankruptcy Trustee for Wild Ridges filed a Suggestion of Bankruptcy for the developer of Wild Ridges.  As a result, Plaintiffs' claims against the developer were stayed, and the Court proceeded with Plaintiffs' claims against the lenders and the Defendants.  On January 26, 2010, and March 22, 2010, the Court entered Orders in the Cabrera and Mark Cases respectively, that dismissed all of Plaintiffs' claims against the lenders, leaving open only the claims against the appraisers. *Cabrera v. Hensley*, No. 09 CVS 544 (N.C. Super. Ct. Jan. 26, 2010) (order granting lender defendants' motions to dismiss); *Mark v. Wachovia Bank, N.A.*, 09 CVS 1062 (N.C. Super. Ct. Mar. 22, 2010) (order granting lender defendants' motions to dismiss).

{7}     On March 23, 2010, the Court entered an Order consolidating the Cabrera Case and the Mark Case for all purposes including discovery, pre-trial motions, and trial.  The parties proceeded with discovery, and Defendants' Motions were filed prior to the Court's May 2, 2011, post-discovery deadline.  Plaintiffs filed responses to Defendants' Motions, and all Defendants, except Defendant Gibbs, filed Replies in Support of Defendants' Motions.  This Court held a hearing on Defendants' Motions on October 5, 2011.

II.

FACTUAL BACKGROUND

{8}     Summary judgment is improper where findings of fact are necessary to resolve an issue of material fact. *Collier v. Collier*, 204 N.C. App. 160, 161–162, 693 S.E.2d 250, 252 (2010) (citing *Hyde Ins. Agency v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 164–165 (1975)).  However, for the aid of the parties and the courts, the trial court may provide a summary of material facts that it finds to be uncontroverted in deciding the motion. *Id.*  The following facts are undisputed in the record.

{9}     Land Resource Group, Inc. ("Land Resources Group"), a Georgia corporation with its registered offices in Raleigh, North Carolina, developed and marketed Wild Ridges through its various affiliates and collected real estate commissions from the sale of lots to Plaintiffs. (Am. Compl. ¶¶ 35–36.)

{10}    Wild Ridges was planned and marketed as an upscale gated residential community that would include common amenities such as an exclusive clubhouse, hot tub facilities, swimming pool, resident gardening areas, hiking trails, and other luxury common areas. (Am. Compl. ¶¶ 62–63.)

{11}    When Plaintiffs purchased their lots in Wild Ridges, roads were beginning to be cut, paving had not begun, few lots had been cleared, and the interior of the development was largely inaccessible except by all-terrain vehicle. (Defs. Van Dyke and Hensley's Br. Supp. Mot. Summ. J. 3; *see e.g.*, D. Nelson Dep. at 17:9–13, 20:14–21:22, 34:24–35:4.) Many of the Plaintiffs were entertained by the developer in nearby Asheville, North Carolina, and taken for tours of the undeveloped Wild Ridges property. (Defs. Van Dyke and Hensley's Br. Supp. Mot. Summ. J. 3; *see e.g.*, Dawn Blitsch Dep. at 37:16–38:12.)

{12}    Each Plaintiff executed a purchase agreement with the developer for the purchase of a lot at Wild Ridges. Only Plaintiffs Richard and Jeri Skelton's purchase agreement contained a financing and appraisal contingency that would have relieved the Skeltons of thier obligation to complete the purchase of their Wild Ridges lot if they were unable to secure financing through a lender, or if the lot appraised below a predetermined amount. (R. Skelton Dep. at 46:11–15, 47:19–21.)[2]

{13}    After the purchase agreements were executed, Plaintiffs secured, through lenders of their choice, financing for the purchase of lots at Wild Ridges. Plaintiffs' lenders contracted with the Defendants to perform appraisals for the benefit of the lenders. (Defs. Van Dyke and Hensley's Br. Supp. Mot. Summ. J. 4.) Plaintiffs do not contend that Defendants' appraisals were for the direct benefit of

---

[2] Plaintiffs Richard and Jeri Skelton voluntarily dismissed their claims with prejudice on June 30, 2011. (Pls. Richard and Jeri Skelton's Notice of Vol. Dismissal with Prej. 1–2.)

anyone other than the lenders. Each Defendant included representations in their appraisals, testified at deposition, or contended by way of affidavit that the lender was the only intended user of the appraisal. (Van Dyke Dep. at 97:1–98:13; Hensley Dep. at 44:4–45:2; R. Keith Hollifield Dep. at 9:3–12; Nelson Eide Dep. at 45:3–19; James H. Gibbs Dep. at 9: 5–12; Defs. Ross and Elliott's Mot. Summ. J. Ex. 11–12; Def. Wright's Mot. Summ. J. Ex. 5; Defs. Highsmith and Oakman's Mot. Summ J. Aff. A & B ¶ 6.)

{14} Plaintiffs did not review, or have access to, the final appraisals of their lots prior to signing purchase agreements to buy property in Wild Ridges, and only two Plaintiffs received copies of the appraisals of their property prior to closing.[3] In fact, some Plaintiffs did not see the appraisal of their property, or learn of the appraised value, until giving their pre-trial deposition. (*E.g.*, Darren Blitsch Dep. at 15:10–14, 16:7–14; Dawn Blitsch Dep. at 94:17–25; S. Cecchin Dep. at 52:8–16; T. Cecchin Dep. at 32:6–11; Lendin Dep. at 31:16–32:2; Mallett Dep. at 60:4–6; B. Nelson Dep. at 18:23–19:1; Perla Dep. at 59:11–16; Sherman Dep. at 77:1–10, 77:22–78:7; J. Skelton Dep. at 24:24–25:2.)

{15} In late 2008, the development of Wild Ridges stopped, Land Resources Group closed its sales office and shut down operations, and to date, no further development or construction has occurred in Wild Ridges. (Am. Compl. ¶ 73.)

{16} Plaintiffs assert claims for professional negligence, fraud in the inducement, and unfair and deceptive trade practices against Defendants. (Am. Compl. 29–31.)

III.

STANDARD OF REVIEW

{17} The purpose of summary judgment is to determine whether any issues of material fact exist, and if there are none, to eliminate the necessity of a full trial where only questions of law are involved. *Strickland v. Lawrence*, 176 N.C. App.

---

[3] Plaintiffs Christopher and Sophie Ondrus ("Ondrus Plaintiffs") testified at deposition that they received a copy of the appraisal prior to closing and briefly reviewed the report. Plaintiffs do not present, nor forecast the presentation of, any evidence showing that the Ondrus Plaintiffs received the appraisal prior to their execution of the purchase agreement.

656, 661, 627 S.E.2d 301, 305, *disc. rev. denied*, 360 N.C. 544, 633 S.E.2d 472 (2006) (citing *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 641–42, 281 S.E.2d 36, 40 (1981)). "The movant has the burden of establishing the absence of any triable issues of fact." *Id.* This burden can be met in one of two ways: "(1) 'by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense'; or (2) 'by showing through discovery that the opposing party cannot produce evidence to support an essential element of her claim.'" *Id.* (quoting *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)).

{18}    "In ruling on a motion for summary judgment, 'the court may consider the pleadings, depositions, admissions, affidavits, answers to interrogatories, oral testimony[,] and documentary materials.'" *Id.* (quoting *Dendy v. Watkins*, 288 N.C. 447, 452, 219 S.E.2d 214, 217 (1975)).

IV.

ANALYSIS

A.

STATUTE OF LIMITATIONS

{19}    Defendants Hollifield, Elliott, and Gibbs all argue that certain Plaintiffs who brought claims against them for professional negligence are barred by the applicable statute of limitations.[4] The varying procedural postures of each Plaintiff prompt the Court to address Plaintiffs' claims individually.

1.

LEGAL STANDARD

{20}    North Carolina has established a three-year statute of limitations for claims of professional negligence. N.C. GEN. STAT. §§ 1–52(1)-(5) (2012). "A cause of action based on negligence accrues when the wrong giving rise to the right to bring suit is committed, even though the damages at that time be nominal and the

---

[4] Defendant Hollifield argues that Plaintiffs David and Daiva Stratton ("Stratton Plaintiffs") are barred by the statute of limitations, Defendant Elliot argues that Plaintiff Rita Bhat ("Bhat") is barred by the statute of limitations, and Defendant Gibbs argues that Plaintiffs Barry and Deborah Nelson ("Nelson Plaintiffs") are barred by the statute of limitations.

injuries cannot be discovered until a later date." *Harrold v. Dowd*, 149 N.C. App. 777, 781, 561 S.E.2d 914, 918 (2002) (citing *Pierson v. Buyher*, 101 N.C. App. 535, 537, 400 S.E.2d 88, 90 (1991)).

{21}    Claims included in an amended pleading relate back to the filing of the original pleading when the original pleading gives sufficient "notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." N.C. R. Civ. P. 15(c).

{22}    Rule 15(c) deals with the relation back of claims, not parties:

> Nowhere in the rule is there a mention of parties. It speaks of claims and allows the relation back of *claims* if the original claim gives notice of the transactions or occurrences to be proved pursuant to the amended pleading. When the amendment seeks to add a party-defendant or substitute a party-defendant to the suit, the required notice cannot occur. As a matter of course, the original claim cannot give notice of the transactions or occurrences to be proved in the amended pleading to a defendant who is not aware of his status as such when the original claim is filed. We hold that [Rule 15(c)] does not apply to the naming of a new party-defendant to the action. It is not authority for the relation back of a claim against a new party.

*Crossman v. Moore*, 341 N.C. 185, 187, 459 S.E.2d 715, 717 (1995) (emphasis added).

{23}    "An action may be commenced by 'filing a complaint with the court' or by 'the *issuance* of a summons' and an order extending permission to file." *Beall v. Beall*, 156 N.C. App. 542, 547, 577 S.E.2d 356, 360 (2003) (citing N.C. R. Civ. P. 3(a)) (emphasis in original).

2.

CLAIM FOR PROFESSIONAL NEGLIGENCE BROUGHT BY DAVID AND DAVIA STRATTON

{24}    David and Davia Stratton ("Stratton Plaintiffs") attempted to add Defendant Hollifield as a party to this case on May 27, 2010, by filing an Amended Complaint without the Court's permission. *Hensley*, No. 09 CVS 544 (N.C. Super. Ct. Aug. 24, 2010) (order granting Defendant Hollifield's motion to dismiss). Eventually, the Stratton Plaintiffs filed a proper motion for leave to file an amended

complaint, and the Court granted the motion on July 1, 2010. An effective Amended Complaint was filed on July 6, 2010. (Cabrera Am. Compl. pg. 32.)

{25} The facts alleged against Defendant Hollifield in the Amended Complaint focus on Hollifield's appraisal of Lot # 162. The Stratton Plaintiffs (the parties who purchased Lot # 162) allege, and Defendant Hollifield agrees, that Hollifield performed the appraisal of Lot # 162 on June 22, 2007. (Am. Compl. ¶ 173; Defs. Eide and Hollifield's Br. in Supp. Mot. Summ. J. 11.) Defendant Hollifield argues that because the Stratton Plaintiffs' case against him did not commence until the civil summons was issued on September 22, 2010, their claim for professional negligence is barred by the applicable statute of limitations. In their response, the Stratton Plaintiffs do not contest the issuance date of the summons, therefore, the Court accepts Defendant's assertion as an undisputed fact. (*See* Pls.' Resps. Defs.' Mots. Summ. J.)

{26} The Stratton Plaintiffs were parties to the original Cabrera Case filed on June 23, 2009, and alleged in the Complaint a claim for professional negligence against "Unknown Appraiser #5." (Compl. ¶ 211.) The substitution of Defendant Hollifield in the Amended Complaint for "Unknown Appraiser # 5" attempts to identify the previously unknown appraiser, and to have the professional negligence claim relate back to the date when Plaintiffs filed the original Complaint.

{27} A cause of action for professional negligence would have accrued "when the wrong giving rise to the right to bring suit [wa]s committed, even though the damages at that time [were] nominal and the injuries [could not] be discovered until a later date." *Harrold*, 149 N.C. App. at 781, 561 S.E.2d at 918 (citation omitted). In this case, the "wrong" would have been the negligent appraisal of Lot # 162. The Amended Complaint alleges that Defendant Hollifield's negligent appraisal of Lot # 162 was performed on June 22, 2007. (Am. Compl. ¶ 173.) Accordingly, at the latest, the alleged "wrong" by Defendant Hollifield would have been completed by June 22, 2007. With the Stratton Plaintiffs' cause of action for professional negligence accruing on June 22, 2007, a claim must have been commenced against

Defendant Hollifield by June 22, 2010. N.C. GEN. STAT. §§ 1–52(1)-(5) (establishing a three-year statute of limitations for claims of negligence).

{28} The Court finds the Stratton Plaintiffs' argument that Rule 15(c) controls the relation back of parties, and allows for their professional negligence claim to relate back to the initial filing of Plaintiffs' original Complaint, to be unpersuasive. As the North Carolina Supreme Court has repeatedly held, Rule 15 "does not apply to the naming of a new party-defendant to the action. It is not authority for the relation back of a claim against a new party." *Crossman*, 341 N.C. at 187, 459 S.E.2d at 717; *Estate of Fennell v. Stephenson*, 354 N.C. 327, 334–35, 554 S.E.2d 629, 633–34 (2001); *Brown v. Kindred Nursing Ctrs. East, LLC*, 364 N.C. 76, 81–82, 692 S.E.2d 87, 91 (2010).

{29} As stated above, the court in *Crossman* held that:

> [w]hen the amendment seeks to add a party-defendant or substitute a party-defendant to the suit, the required notice cannot occur. As a matter of course, the original claim cannot give notice of the transactions or occurrences to be proved in the amended pleading to a defendant who is not aware of his status as such when the original claim is filed.

*Crossman*, 341 N.C. at 187, 459 S.E.2d at 717.

{30} Here, Plaintiffs did not commence their action against Defendant Hollifield until they filed a proper Amended Complaint on July 6, 2010. *Beall*, 156 N.C. App. at 547, 577 S.E.2d at 360 (citing N.C. R. Civ. P. 3(a)). Because Plaintiffs did not commence their action against Defendant Hollifield by June 22, 2010, their claim for professional negligence is barred by the applicable statute of limitations. Accordingly, Defendant Hollifield's Motion for Summary Judgment as to the Stratton Plaintiffs' claim for professional negligence is **GRANTED** and the Stratton Plaintiffs' claim for professional negligence is hereby **DISMISSED** with prejudice.

3.

CLAIM FOR PROFESSIONAL NEGLIGENCE BROUGHT BY RITA BHAT

{31} Plaintiffs attempted to add Defendant Elliott as a party to this case on May 27, 2010, by filing an Amended Complaint without the Court's permission. In an Order entered September 1, 2010, this Court dismissed Plaintiffs' claims against

Defendant Elliott for insufficiency of process, but without prejudice for Plaintiffs to attempt to make timely service on Defendant Elliott. *Hensley*, No. 09 CVS 544 (N.C. Super. Ct. Sept. 1, 2010) (order granting Defendant Elliott's motion to dismiss). Eventually Plaintiffs filed an effective Amended Complaint and Defendant Elliot was added as a party to this case.

{32} In the Amended Complaint filed July 6, 2010, Plaintiff Bhat alleges that on or about June 28, 2007, Defendant Elliott negligently performed an appraisal of Wild Ridges Lot # 225. (Am. Compl. ¶ 178.) A three-year statute of limitations applies to claims of professional negligence, N.C. GEN. STAT. § 1–52(5), and a cause of action for professional negligence accrues "when the wrong giving rise to the right to bring suit [wa]s committed, even though the damages at that time [were] nominal and the injuries [could not] be discovered until a later date." *Harrold*, 149 N.C. App. at 781, 561 S.E.2d at 918 (citation omitted). In this case, the "wrong" would have been the negligent appraisal of Lot # 225.

{33} Plaintiffs allege that Defendant Elliott was professionally negligent in his appraisal of Lot # 225. Accordingly, Plaintiffs were required to bring any claim for professional negligence against Defendant Elliot within three-years of June 28, 2007, when Defendant Elliott allegedly performed the appraisal. Because Plaintiffs' attempted amendment of the Complaint was ineffective, Defendant was not properly made a party to this action until Plaintiffs filed an effective Amended Complaint on July 6, 2010. Because Plaintiffs' Amended Complaint was filed more than three-years after the date on which the alleged wrong giving rise to Plaintiff Bhat's claim occurred, Plaintiffs' claim is barred by the applicable statute of limitations.

{34} As discussed above, the Court finds unpersuasive Plaintiffs' argument that Rule 15(c) allows for the claims brought against Defendant Elliott to relate back to the date on which Plaintiffs initially filed their Complaint. Because Plaintiffs' claim for professional negligence is barred by the applicable statute of limitations, Defendant Elliott's Motion for Summary Judgment as to Plaintiff

Bhat's claim for professional negligence is **GRANTED** and Plaintiff Bhat's claim for professional negligence is **DISMISSED** with prejudice.

4.

CLAIM FOR PROFESSIONAL NEGLIGENCE BROUGHT BY PLAINTIFFS KEITH AND DIANE NELSON ("NELSON PLAINTIFFS")

{35}    The Nelson Plaintiffs attempted to add Defendant Gibbs to this action by amending their Complaint on May 27, 2010.  In an Order entered on September 9, 2010, the Court held that the attempted amendment was ineffective because Plaintiffs had failed to seek leave from the Court to amend their complaint. *Hensley*, No. 09 CVS 544 (N.C. Super. Ct. Sept. 9, 2010) (order granting Defendant Gibbs' motion to dismiss).  As a result, the Court dismissed Plaintiffs' claims against Defendant Gibbs, but without prejudice to Plaintiffs to attempt proper amendment and service.  Plaintiffs eventually filed an effective Amended Complaint on July 6, 2010, and a summons was issued for Defendant Gibbs on September 22, 2010.

{36}    In the Amended Complaint, the Nelson Plaintiffs allege that on or about June 29, 2007, Defendant Gibbs negligently performed an appraisal of Lot # 155.  (Am. Compl. ¶ 113.)  A cause of action for professional negligence accrues "when the wrong giving rise to the right to bring suit [wa]s committed, even though the damages at that time [were] nominal and the injuries [could not] be discovered until a later date."  *Harrold*, 149 N.C. App. at 781, 561 S.E.2d at 918 (citations omitted).  In this case, the "wrong" would have been the negligent appraisal of Lot # 155.  In North Carolina there is a three-year statute of limitations for claims of professional negligence.  N.C. GEN. STAT. § 1–52(5).

{37}    Plaintiffs allege that Defendant Gibbs was professionally negligent in his appraisal of Lot # 155.  Accordingly, Plaintiffs must have brought a claim for professional negligence within three-years of June 29, 2007, when Defendant Gibbs allegedly performed the appraisal.  Because Plaintiffs attempted amendment was ineffective, Defendant Gibbs was not properly made a party to this action until Plaintiffs filed an effective Amended Complaint on July 6, 2010. Plaintiffs' Amended

Complaint was filed more than three years after the date on which the alleged wrong giving rise to the Nelson Plaintiffs' claim occurred. Accordingly, Plaintiffs' claim is barred by the applicable statute of limitations.

{38}    As previously stated, the Court finds unpersuasive the Nelson Plaintiffs' argument that Rule 15(c) allows for the claims brought against Defendant Gibbs to relate back to the date on which Plaintiffs initially filed their Complaint. Because Plaintiffs' claim for professional negligence is barred by the applicable statute of limitations, Defendant Gibbs' Motion for Summary Judgment as to the Nelson Plaintiffs' claim for professional negligence is **GRANTED** and their claim for professional negligence is **DISMISSED** with prejudice.

B.

PROFESSIONAL NEGLIGENCE

{39}    Defendants advance three arguments for why they are entitled to summary judgment on Plaintiffs' remaining claims for professional negligence. First, Defendants argue that under established case law they did not owe a legally recognized duty to any of the Plaintiffs. Second, Defendants argue in the alternative, that even if Defendants owed a duty to Plaintiffs, a claim for professional negligence requires that the Plaintiffs reasonably rely on the Defendants' representations, and that in this case, none of the Plaintiffs actually or justifiably relied on any of the Defendants' appraisals. Lastly, Defendants Van Dyke and Wright argue that the Plaintiffs who asserted claims for professional negligence against them were contributorily negligent, and thus barred from recovery.

{40}    Plaintiffs respond that the Defendant appraisers did owe a duty to third parties who might have relied on their appraisals, and that, with regard to reliance, Plaintiffs need only show that "a defendant's words or conduct possessed 'the tendency or capacity to mislead' or create the likelihood of deception." (Pls.' Mem. in Opp'n Defs. Van Dyke & Hensley's Mot. for Summ. J. 8 (citations omitted).)

1.

LEGAL STANDARD

{41} For claims of negligence alleging that the Defendants made negligent misrepresentations, North Carolina imposes on appraisers the standard of liability espoused in Restatement of Torts (Second) § 552. *Ballance v. Rinehart*, 105 N.C. App. 203, 206–08, 412 S.E.2d 106, 108–09 (1992) (stating that "[section] 552 . . . is the appropriate standard under which to assess a real estate appraiser's liability."); *Williams v. United Cmty. Bank*, No. COA11–532, 2012 N.C. App. LEXIS 209, at *16–17, 724 S.E.2d 543, 550 (N.C. App. 2012) (stating that when evaluating negligence claims brought against appraisers by third parties, the North Carolina Court of Appeals "expressly adopt[s] the approach for determining negligence by accountants as set forth by our Supreme Court in *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 201, 367 S.E.2d 609, 610 (1988)."); *Anderson v. Costal Cmtys. at Ocean Ridge Plantation, Inc.*, 2012 NCBC 33 ¶¶ 47–63 (N.C. Super. Ct. May 30, 2012) (applying the standard of liability established in *Ballance* and *Raritan* to evaluate plaintiffs' claims for negligent misrepresentation against appraisers).

{42} The standard stated in section 552 was adopted by the North Carolina Supreme Court in *Raritan* as the standard of liability for accountants, and provides that:

Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977).

{43}   In applying this more limited standard of liability to real estate appraisers, North Carolina's courts recognized the potentially excessive liability that might result if a reasonable forseeability test were applied to appraisers because "[l]ike an accountant, real estate appraisers have no control over the distribution of their reports once rendered and therefore cannot limit their potential liability." *Ballance*, 105 N.C. App. at 207, 412 S.E.2d at 109.

{44}   Even when the requisite relationship is present between plaintiff and defendant, section 552 also requires the plaintiff to show reliance on the negligently provided information. Restatement (Second) of Torts § 552(1). "One who, in the course of his business, . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information." *Id.* at § 552(1) (emphasis added). Justifiable reliance requires that the plaintiff actually relied on the information. *Raritan*, 322 N.C. at 206, 367 S.E.2d at 612 ("A party cannot show justifiable reliance on information . . . without showing that he relied upon the actual . . . statements themselves to obtain this information."); *Anderson*, 2012 NCBC 33 at ¶ 62 ("[D]irect reliance is precisely what is required to state a claim against Appraiser Defendants.")

2.

DUTY

{45}   In evaluating Defendants' first argument, the Court must first determine whether Defendants owed a duty to Plaintiffs. Under section 552, liability can be imposed on those who "in the course of [their] business, profession or employment, . . . suppl[y] false information for the guidance of others in their business transactions . . . ." Restatement (Second) of Torts § 552(1). However, this liability is limited to loss suffered "by the person or one of a limited group of persons

for whose benefit and guidance [the appraiser] *intends* to supply the information or *knows* that the recipient intends to supply it . . . ." *Id.* at § 552(2)(a) (emphasis added). Stated plainly, an appraiser owes a duty to those who he intends to be the recipients of an appraisal and those to whom he knows the intended recipient also intends to supply the appraisal. *See id.*

{46} This interpretation of section 552's limit on liability is bolstered by the comments to the section that discuss to whom a surveyor of property would be liable for providing a negligent survey of real estate.

> In 1934, [Company A], a firm of surveyors, contracts with B to make a survey and description of B's land. [Company A] is not informed of any intended use of the survey report but knows that survey reports are customarily used in a wide variety of real estate transactions and that it may be relied upon by purchasers, mortgagees, investors and others. The survey is negligently made and misstates the boundaries and extent of the land. In 1958 C, relying upon the report that B exhibits to him, purchases the land from B, and in consequence suffers pecuniary loss. [Company A] *is not* liable to C.

Restatement (Second) of Torts § 552 cmt. h, illus. 12 (emphasis added); *see also Howell v. Betts*, 211 Tenn. 134, 362 S.W.2d 924 (1962) (stating the factual and legal underpinnings for illustration twelve's result). "It is not enough that the maker merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated." *Id.* at cmt. h.

{47} It is undisputed in this case that each of the Defendants was hired by the lending institution engaged by each Plaintiff to finance the purchase of property at Wild Ridges. In addition, the appraisals themselves indicate that the lending institution was the "client/lender." (*See e.g.,* Summ. Appraisal Report Lot 81 p. 1; Summ. Appraisal Report Lot 129 p. 1; Summ. Appraisal Report Lot 11 p. 1; Summ. Appraisal Report Lot 126 p. 1; Summ. Appraisal Report Lot 75 p. 1; Summ. Appraisal Report Lot 42 p. 1.) In addition, each Defendant testified at deposition, or offered by way of affidavit, that the lending institution was the only intended user of the appraisal. (Van Dyke Dep. at 97:1–98:13; Hensley Dep. at 44:4–45:2; R.

Keith Hollifield Dep. at 9:3–12; Nelson Eide Dep. at 45:3–19; James H. Gibbs Dep. at 9:5–12; Defs. Ross and Elliott's Mot. Summ. J. Ex. 11–12; Def. Wright's Mot. Summ. J. Ex. 5; Defs. Highsmith and Oakman's Mot. Summ J. Aff. A & B ¶ 6.)

{48}     Plaintiffs do not argue that they were the intended recipients of the appraisals performed by Defendants, rather "that a reasonably foreseeable Plaintiff is *known* to the Defendant." (Pls.' Mem. Law Opp'n. Defs. Van Dyke and Hensley's Mots. Summ. J. 7.) Plaintiffs contend that the Court should apply the duty enunciated by the North Carolina Court of Appeals in *Alva v. Cloninger*, and hold "that the appraiser's duty to third parties include [sic] a prospective buyer, regardless of privity, who reasonably relies upon the outcome of the appraisal." (Pls.' Mem. Law Opp'n. Defs. Van Dyke and Hensley's Mots. Summ. J. 3 (citing *Alva v. Cloninger*, 51 N.C. App. 602, 277 S.E.2d 535 (1981).)

{49}     In *Alva*, the court cited to section 552 to support its holding that the appraiser defendants could be found liable because "plaintiffs' reliance upon the appraisal was, or should reasonably have been, expected by defendant." *Alva*, 51 N.C. App. at 611, 277 S.E.2d at 541. However, the *Alva* court failed to quote section 552 in its entirety. While section 552 does ask whether plaintiffs' reliance should have been reasonably expected by the defendant, it also limits a defendant's liability to "the person or one of a limited group of persons for whose benefit and guidance [the appraiser] *intends* to supply the information or *knows* that the recipient intends to supply it . . . ." Restatement (Second) of Torts § 552(2)(a) (emphasis added). In *Raritan*, the North Carolina Supreme Court clarified the above-stated limits on liability under section 552, by rejecting the reasonable forseeability test adopted in *Alva*, and the North Carolina Court of Appeals subsequently applied *Raritan*'s limits on liability to appraisers in both *Ballance* and *Williams*. *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 219, 513 S.E.2d 320, 324 (1999) (stating that the "*Raritan* . . . Court 'rejected as too expansive the position that extends liability to all persons the accountant should reasonably foresee might obtain and rely on the information generated.'" (quoting David A. Logan & Wayne A. Logan, *North Carolina Torts* § 25.30, at 549 (1996))).

Accordingly, this Court can not conclude that the reasoning or holdings articulated in *Alva* regarding forseeability represent the current law of North Carolina to be applied to this case.

{50} Even if the North Carolina Supreme Court had not clarified the limits of liability in *Raritan*, Plaintiffs' argument, that "a reasonably foreseeable Plaintiff is known," (Pls.' Mem. Law Opp'n. Defs. Van Dyke and Hensley's Mots. Summ. J. 7.), is irreconcilable with section 552 and its accompanying comments. Comment h to section 552 provides:

> [i]t is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, *distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it*.

Restatement (Second) of Torts § 552 cmt. h (emphasis added). While comment h addresses section 552(2)(a)'s limit on liability to those whom the maker of a representation intended to supply the information, its distinction between those who are known and intended to rely on the information, and those who are part of "the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably . . . take some action in reliance upon it," suggests that those who are reasonably foreseeable are not the same as those who are known. *See id.*

{51} Taken to its logical conclusion, Plaintiffs' argument—that those who are reasonably foreseeable to the maker of a representation are also known to the maker—would eviscerate the limits on liability enunciated by the Court in *Raritan*. A Defendant would not have to "know that the recipient intends" to supply another with the information, rather, liability would be extended to all reasonably foreseeable individuals that the intended recipient, unbeknownst to the Defendant, intended to supply the information. This interpretation would effectively write out the knowledge requirement from section 552.

{52} Looking to the undisputed facts of this case, the Court finds that no evidence has been presented, nor have Plaintiffs argued, that they were the

intended recipients of the appraisals. Accordingly, under section 552, to establish that Defendants owed a duty, the Court must find that there exists some evidence that Defendants knew the intended recipients (in this case the lending institutions that hired Defendants to perform the appraisals) intended to supply Plaintiffs with the appraisals for Plaintiffs' use in the transaction for which Defendants were hired, or a substantially similar transaction. *See* § 552(2)(a)-(b). Such evidence, however, is nowhere to be found. At best, Plaintiffs argue that because "each and every appraisal performed by the Defendants *identifies* the individual Plaintiffs as prospective borrowers[,] . . . each Plaintiff herein was a forseeably [sic] affected by the appraisals." (*E.g.*, Pls.' Mem. Law Opp'n. Mots. Summ. J of Defs. Eide and Hollifield 7 (emphasis in original).) *Raritan*, *Ballance*, and *Williams* all establish that reasonable forseeability is not the test for determining liability under section 552. In addition, there is no evidence before the court demonstrating that Defendants knew the intended recipients (the lenders) intended to supply Plaintiffs with the appraisals. Accordingly, Defendants have met their burden of showing that there is no evidence to support the duty element of Plaintiffs' remaining claims for professional negligence.

3.

RELIANCE

{53} Defendants' second argument contends that even if Defendants owed a duty to Plaintiffs, Plaintiffs must show that they reasonably relied on the Defendants' representations to prove their claim of professional negligence. "Justifiable reliance is an essential element of both fraud and negligent misrepresentation." *Helms v. Holland*, 124 N.C. App. 629, 635, 478 S.E.2d 513, 517 (1996) (citing *C.F.R. Foods, Inc. v. Randolph Dev. Co.*, 107 N.C. App. 584, 588, 421 S.E.2d 386, 389, *disc. rev. denied*, 333 N.C. 166, 424 S.E.2d 906 (1992). The "question of justifiable reliance is analogous to that of reasonable reliance in fraud actions," *Marcus Bros. Textiles, Inc.*, 350 N.C. at 224, 513 S.E.2d at 327 (citation omitted), which is normally "a question for the jury, unless the facts are so clear that they support only one conclusion." *Forbis v. Neal*, 361 N.C. 519, 527, 649

S.E.2d 382, 387 (2007) (citing *Marcus Bros. Textiles, Inc.*, 350 N.C. at 225, 513 S.E.2d at 327). "Justifiable reliance requires actual reliance. *Raritan*, 322 N.C. at 206, 367 S.E.2d at 612. North Carolina's Pattern Jury Instructions recite, that "'[a]ctual reliance is direct reliance upon false information.'" *Walker v. Town of Stoneville*, No. COA10–278, 2011 N.C. App. LEXIS 709, *15 (N.C. App. 2011) (quoting N.C.P.I. - Civil 800.10 (1992)) (alteration in original). "[A] party cannot show justifiable reliance on information contained in [an appraisal] without showing that he relied upon the actual [appraisal itself] to obtain this information." *Raritan*, 322 N.C. at 206, 367 S.E.2d at 612.

{54}    After reviewing the pleadings, contentions of counsel, and all the evidence presented to the Court in support of, and opposition to, Defendants' Motions, the Court finds it undisputed that Plaintiffs did not rely on the Defendants' appraisals when they entered into their respective purchase agreements to purchase property at Wild Ridges. The evidence instead shows that each Plaintiff executed a purchase agreement to buy a lot at Wild Ridges prior to securing financing, and before an appraisal was performed on the purchased lot.[5]

_____

[5] (*see* Darren Blitsch Dep. at 15:10–14 (stating that Plaintiff never reviewed the appraisals performed on either of the lots he purchased); Dawn Blitsch Dep. at 94:17–25 (stating that Plaintiff never reviewed the appraisal performed on the lot purchased by Plaintiff); Cunningham Dep. at 49:24–50:12, 53:7–18 (stating that Plaintiff never saw the appraisal prior to closing); S. Cecchin Dep. at 52:4–54:8 (stating that Plaintiff never saw the appraisal performed on the lot purchased by Plaintiff); T. Cecchin Dep. at 32:6–11 (stating that Plaintiff never saw the appraisal performed on the lot purchased by Plaintiff); Lendin Dep. at 31:13–32:11 (stating that Plaintiff never saw the appraisal before closing); Mallett Dep. at 60:1–11 (stating that Plaintiff did not recall ever reading the appraisal); D. Nelson Dep. at 127:12–16, 127:24–128:3, 129:18–22 (stating that Plaintiff had no recollection of when she received the appraisal); Perla Dep. at 59:4–16 (stating that Plaintiff never saw the appraisal); K. Reid Dep. at 39:3–14, 39:21–40:11 (stating that Plaintiff had not received an appraisal prior to April 2009); R. Reid Dep. at 32:16–33:11 (stating that Plaintiffs had not requested a copy of the appraisal until after they obtained counsel); J. Sauchak Dep. at 50:8–51:2, 51:21–52:3, 77:25–78:4 (stating that Plaintiff did not remember receiving the appraisal before signing the lot purchase agreement); L. Sauchak Dep. at 53:17–54:7 (stating that Plaintiff received the appraisal for the first time after closing); Jacobson Dep. at 41:18–42:5 (stating that Plaintiff had not seen the appraisal prior to closing); Selkowitz Dep. at 50:23–51:20 (stating that Plaintiff did not know when he received the appraisal); Sherman Dep. at 77:1–10, 77:22–78:3 (stating that Plaintiff did not recall ever receiving the appraisal); R. Skelton Dep. at 90:3–16, 92:6–15 (stating that Plaintiff thought that he

Thus, at the time each lot was appraised, Plaintiffs were already contractually obligated to purchase the property and the appraisals could have played no role in Plaintiffs' decisions to purchase their respective lots at Wild Ridges.

{55}    Plaintiffs argue Defendants' Motions should be denied because "Plaintiffs have made the point many times over in depositions that, *although they didn't necessarily see the appraisals prior to having closed*, at the very least they knew that they were performed as a predicate to financing." (*E.g.*, Pls.' Resp. Mots. Summ. J. of Defs. Eide and Hollifield 9.)  This argument fails for two primary reasons.  First, Plaintiffs were obligated to purchase their respective lots after they executed their purchase agreement, not when they closed.  *Williams*, 2012 N.C. App. LEXIS 209, at \*15, 724 S.E.2d at 550 (holding that because there were no contingency clauses in the purchase agreements "[e]ven had the [defendants]

---

received the appraisal "about the time I was working on my assessment appeal."); Stetkewicz Dep. at 55:13–56:17 (stating that Plaintiff never received an appraisal); B. Tebbitt Dep. at 19:21–21:9, 28:6–20 (stating that Plaintiff did not have the appraisal as of January 9, 2009); G. Tebbitt Dep. at 38:25–39:8, 40:7–10 (stating that Plaintiff did not recall receiving the appraisal prior to closing); Narayanan Dep. at 65:11–22 (stating that Plaintiff did not recall ever seeing the appraisal report); L. Van Dyke Dep. at 11:6–13 (stating that Plaintiff took no efforts to ascertain the value of the lot prior to execution of an agreement to buy); Pavia Dep. at 42:20–25 (stating that the appraisal was not provided to Plaintiff prior to closing); David Stratton Dep. at 28:2–35:1 (stating that Plaintiff never saw the appraisal); Daiva Stratton Dep. at 16:16–18 (stating that Plaintiff did not remember looking to see what the appraisal of the property was); Cabrera Dep. at 97:2–11 (stating that Plaintiff received the appraisal from the lender after closing); R. McCormick Dep. at 119:12–120:10 (stating that Plaintiff did not recall when he received the appraisal); C. McCormick Dep. at 43:18–25 (stating that Plaintiff thought that she received the appraisal with the closing paperwork); Bhat Dep. at 115:7–24 (stating that Plaintiff did not receive the appraisal until after closing); K. Nelson Dep. at 36:19–37:5 (stating that Plaintiff never received a copy of the appraisal prior to closing and did not receive the appraisal until sometime in 2010); D. Nelson Dep. at 26:9–16 (stating that Plaintiff didn't receive appraisal until sometime in 2010); C. Ondrus Dep. at 87:1–3 (stating that Plaintiff did not see the appraisal until closing); S. Ondrus Dep. at 25:22–28:3 (stating that Plaintiff did not see the appraisal until closing); C. Lavin Dep. at 44:19–24 (stating that Plaintiff had only seen the documents that she signed prior to her husband passing in 2009); Barnes Dep. at 59:16–22 (stating that Plaintiff never received a copy of the appraisal); C. Best Dep. at 56:6–11 (stating that Plaintiff thought that he received the appraisal after closing); L. Best Dep. at 19:21–20:6 (stating that Plaintiff did not know when she received the appraisal and that she never looked at it).)

appraised the lots differently, [p]laintiffs would still have been obligated to purchase them at the prices agreed to in the purchase contracts.")

{56}    Secondly, Plaintiffs' argument indicates that, in addition to overemphasizing the significance of the closing process, they also relied on the actions of the bank, rather than the appraisals, to determine whether to proceed with purchasing the property, i.e., with closing.  Plaintiffs stated in their responses that the appraisals:

> were performed as a predicate to financing, and [that Plaintiffs] would not have gone through with these transactions in each instance had in [sic] not been for the appraisals. . . .  Thus, at the most fundamental level of intuition, there are no lender financed real estate closings at all without supporting appraisals.  And without financing, there is no closing. . . . [T]his is a matter of general knowledge to the layperson, and it follows that [Plaintiffs] would never have incurred the massive debt each owes had it not been for the appraisals.

(*E.g.*, Pls.' Resp. Mots. Summ. J. of Defs. Eide and Hollifield 9–10.)  Essentially, Plaintiffs argue that if they had not received lender financing, then they would not have incurred the debt that they now owe.

{57}    Ignoring for a moment that Plaintiffs were obligated to pay upon execution of their respective purchase agreements, Plaintiffs' argument suggests that because the appraisals indicated an artificially inflated value of the property, the banks believed they had sufficient collateral to finance the loans they eventually approved, and because the banks financed Plaintiffs' loans, Plaintiffs decided to close on their property purchases.  Plaintiffs' argument is that in reaching a decision about whether the property was a good investment or was properly appraised, Plaintiffs used the banks as a proxy and relied on the banks' decisions to approve financing rather than the appraisals.  This is exactly the type of indirect reliance that the North Carolina Supreme Court rejected in *Raritan*, "[A] party cannot show justifiable reliance on information contained in [an appraisal] without showing that he relied upon the actual [appraisal itself] to obtain this information." *Raritan*, 322 N.C. at 206, 367 S.E.2d at 612.  Accordingly, the Court holds that Plaintiffs' self-proclaimed reliance on the actions of the banks rather than the

content of the appraisals, is insufficient to meet the justifiable reliance element of negligent misrepresentation. *Id.*; *see also Brinkman v. Barrett Kays & Assocs., P.A.*, 155 N.C. App. 738, 743, 575 S.E.2d 40, 44 (2003) (stating that plaintiffs' reliance on a governmental agency's decision to issue a permit was not the kind of actual reliance required by law when there was no evidence to show that the representations were made to plaintiffs).

{58} Because the Court holds that: (1) Defendants did not owe a duty to Plaintiffs and (2) Plaintiffs did not justifiably rely on Defendants' appraisals, Defendants' Motions for Summary Judgment as to this claim must be **GRANTED** and Plaintiffs' claim for professional negligence is hereby **DISMISSED** with prejudice.

{59} Having held that there was no duty or justifiable reliance, the Court does not reach Defendants' arguments that certain Plaintiffs were contributorily negligent.

## C.
## FRAUD IN THE INDUCEMENT

{60} Defendants offer a number of arguments in support of their Motions for Summary Judgment as to Plaintiffs' claim for fraud in the inducement. Specifically, Defendants argue that they are entitled to summary judgment because: (1) no evidence has been produced to show that Defendants intended to deceive Plaintiffs, (2) Plaintiffs cannot show that the alleged misrepresentations were material facts, (3) Plaintiffs could not have reasonably relied on Defendants' appraisals because there was no actual reliance, (4) Defendants did not make any of the alleged misrepresentations at issue in this case to any of the Plaintiffs, and (5) there was no evidence that Plaintiffs were actually deceived. (Br. Supp. Mot for Summ. J. of Defs. Van Dyke and Hensley 7–10, 11–13; Defs. Eide and Hollifield's Mem. Supp. Summ. J. 12–13; Defs. Highsmith and Oakman's Mem. Law Supp. Mot. Summ. J. 9–14; Def. Wright's Mem. Law Supp. Mot. Summ. J. 11–14; Defs. Ross and Elliott's Mem. Law Supp. Mot. Summ. J. 13–15; Def. Gibbs' Mem. Law Supp. Mot Summ. J. 14–16.)

{61}     Plaintiffs respond to some of Defendants' arguments, but not all. Ignoring arguments 1, 4, and 5, Plaintiffs instead argue that Defendants' Motions for Summary Judgment should be denied because: (a) (in response to Defendants' second argument) statements of opinion that are known to be contrary to the facts may be actionable, Defendants are licensed by the state and subject to the Uniform Standards of Appraisal Practice, and Defendants were not able to produce any examples of "nixed real-estate closings"; and (b) (in response to Defendants' third argument) that reliance is a factual issue to be determined by the jury rather than at summary judgment. (*E.g.,* Pls.' Mem. Opp'n. Mots. Summ. J. of Defs. Eide and Hollifield 2, 10–11.)

{62}     "'The essential elements of fraud [in the inducement] are: (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" *Media Network, Inc. v. Long Haymes Carr, Inc.,* 197 N.C. App. 433, 453, 678 S.E.2d 671, 684 (2009) (quoting *Rowan County Bd. of Educ. v. U.S. Gypsum Co.,* 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992)) (alteration in original) (adopting the elements of fraud as the elements for fraud in the inducement). In addition, "[j]ustifiable reliance is an essential element of both fraud and negligent misrepresentation." *Helms v. Holland*, 124 N.C. App. at 635, 478 S.E.2d at 517 (citing *C.F.R. Foods, Inc.,* 107 N.C. App. at 588, 421 S.E.2d at 389 (stating that a plaintiff's reliance must be reasonable to prove fraud)).

{63}     The "question of justifiable reliance is analogous to that of reasonable reliance in fraud actions," *Marcus Bros. Textiles, Inc.,* 350 N.C. at 224, 513 S.E.2d at 327, which is normally "a question for the jury, unless the facts are so clear that they support only one conclusion." *Forbis*, 361 N.C. at 527, 649 S.E.2d at 387 (citing *Marcus Bros. Textiles, Inc.,* 350 N.C. at 225, 513 S.E.2d at 327). "Justifiable reliance requires actual reliance. *Raritan*, 322 N.C. at 206, 367 S.E.2d at 612. North Carolina's Pattern Jury Instructions recite that '[a]ctual reliance is direct reliance upon false information.'" *Walker*, 2011 N.C. App. LEXIS 709, *15 (2011) (quoting N.C.P.I. - Civil 800.10 (1992)) (alteration in original). "[A] party cannot

show justifiable reliance on information contained in [an appraisal] without showing that he relied upon the actual [appraisal itself] to obtain this information." *Raritan*, 322 N.C. at 206, 367 S.E.2d at 612. In addition, "an essential element of actionable fraud is that the false representation or concealment be made *to the party acting thereon*." *Hospira Inc. v. AlphaGray Corp.*, 194 N.C. App. 695, 699, 671 S.E.2d 7, 11 *disc. review denied*, 363 N.C. 581, 682 S.E.2d 210 (2009) (stating that, absent an agency or fiduciary relationship, summary judgment was appropriate when the only evidence presented showed that defendant made representations to a third-party and not plaintiff.) (emphasis in original).

{64}    Generally, the Court must also find that the representation upon which a fraud claim rests is "definite and specific," and involves "[a] subsisting or ascertainable fact, as distinguished from a matter of opinion or representation relating to future prospects[.]" *Ragsdale v. Kennedy*, 286 N.C. 130, 139, 209 S.E.2d 494, 500 (1974) (citing *Berwer v. Ins.*, 214 N.C. 554, 200 S.E. 1 (1938)). However, the general rule that liability is not imposed for an expression of opinion is:

> "not a hard and fast rule; . . . it does not apply to the dishonest expression of an opinion not actually entertained. . . . [Thus,] a statement purporting to be opinion may be the basis for fraud if, at the time it is made, the maker of the statement holds an opinion contrary to the opinion he or she expresses, and the maker also intends to deceive the listener."

*Leftwich v. Gaines*, 134 N.C. App. 502, 508–09, 521 S.E.2d 717, 723 (1999) (quoting 37 C.J.S. *Fraud* § 13, at 190 (1997)) (first two alterations in original).

{65}    After reviewing the pleadings, contentions of counsel, and all of the evidence which was presented to the Court in support of, and in opposition to, Defendants' Motions for Summary Judgment, the Court finds that: (1) it is undisputed that Plaintiffs did not rely on the Defendants' appraisals when they entered into their respective purchase agreements to purchase property at Wild Ridges, and (2) none of the representations at issue in this case were made by Defendants to any of the Plaintiffs.

{66}    As previously noted, Plaintiffs all executed purchase agreements to buy their lots at Wild Ridges prior to securing financing and before appraisal of the lots were performed.  Thus, at the time each lot was appraised, Plaintiffs were contractually obligated to purchase the property, and the appraisals could not have played a role in Plaintiffs' decisions to purchase.

{67}    Plaintiffs argue that Defendants' Motions should be denied because "Plaintiffs have made the point many times over in depositions that, *although they didn't necessarily see the appraisals prior to having closed*, at the very least they knew that they were performed as a predicate to financing." (*E.g.*, Pls.' Resp. Mots. Summ. J. of Defs. Eide and Hollifield 9 (emphasis added).)[6]  For the reasons stated above in the Court's analysis of reliance as to Plaintiffs' professional negligence claims, the Court finds Plaintiffs' argument unpersuasive.  Even if the Court found justifiable reliance, Defendants have satisfied the Court that Plaintiffs have neither demonstrated nor forecast any evidence that the Defendants made any of the alleged misrepresentations directly to Plaintiffs as required by *Hospira Inc.*, 194 N.C. App. at 699, 671 S.E.2d at 11.  Accordingly, the Court **GRANTS** Defendants' Motions for Summary Judgment as to Plaintiffs' claim for fraud in the inducement. Plaintiffs' claim is hereby **DISMISSED** with prejudice.  The Court finds it unnecessary to address Defendants' remaining arguments in support of Defendants' Motions for Summary Judgment as to Plaintiffs' claim for fraud in the inducement.

D.

UNFAIR AND DECEPTIVE TRADE PRACTICES

{68}    "North Carolina provides a private cause of action for persons injured by a violation of the Unfair and Deceptive Trade Practices Act ("UDTPA")." *Brinkman*, 155 N.C. App. at 743, 575 S.E.2d at 44 (citing N.C. GEN. STAT. § 75–16 (2001)).  "The elements of [a UDTPA] claim are: '(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business.'"  *Id.* (quoting

---

[6] *See* note 4 *supra*.

*Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460–61, 400 S.E.2d 476, 482 (1991)). "'Where an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains.'" *Hospira Inc.*, 194 N.C. App. at 702, 671 S.E.2d at 12 (quoting *Tucker v. Blvd. at Piper Glen L.L.C.,* 150 N.C. App. 150, 154, 564 S.E.2d 248, 251 (2002)).

{69}    For the reasons stated in the Court's discussion of Defendants' Motions for Summary Judgment as to Plaintiffs' claim for professional negligence and fraud in the inducement *supra*, the Court finds that no evidence has been presented or forecast that Plaintiffs actually relied on the alleged misrepresentations included in the appraisals prepared by Defendants.  Thus, Defendants' Motions for Summary Judgment are **GRANTED** as to this claim, and Plaintiffs' UDTPA claim is hereby **DISMISSED** with prejudice.  The Court does not reach Defendants' alternative arguments in support of Defendants' Motions for Summary Judgment as to Plaintiffs' UDTPA claim.

V.

CONCLUSION

{70}    For the reasons stated above, Defendants' Motions for Summary Judgment are **GRANTED**.  Plaintiffs' claims for negligent misrepresentation, fraud in the inducement, and unfair and deceptive trade practices are hereby **DISMISSED** with prejudice.

**SO ORDERED**, this the 16th day of July, 2012.